COMMONWEALTH vs. JOSHUA DARGON.

Plymouth. March 2, 2010. - July 29, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Hospital record, Hearsay, First
complaint, Relevancy and materiality. *Practice, Criminal,* Argument by
prosecutor, Assistance of counsel.

At the trial of indictments charging aggravated rape and indecent assault and
battery, the admission in evidence of a written form that was part of a
sexual assault evidence kit, which included notations of statements made
by the victim for the purposes of obtaining medical treatment, did not
violate the limitations of the hospital records admissibility statute, G. L.
c. 233, § 79 [393-396]; moreover, although the printed language on the
form itself contained conclusory terms suggesting that a sexual assault did
in fact occur, the failure to redact that language did not give rise to a
substantial risk of a miscarriage of justice, given the other strong evidence
that a sexual assault and rape had occurred [396-398].

At the trial of indictments charging aggravated rape and indecent assault and
battery, the admission in evidence of a written form that was part of a sexual
assault evidence kit, which included notations of statements made by the
victim for the purposes of obtaining medical treatment, did not, when taken
together with the examining medical professional's testimony, amount to a
prejudicial "piling on" of sexual assault complaint testimony in violation of
the so-called "first complaint" rule, where the form served the independent
purpose of establishing essential elements of the Commonwealth's aggravated
rape case, in that it provided a complete picture of the timing of the complaint
of digital penetration, and the question whether the assault in question was
sexual was a central issue at trial; and, likewise, where the medical profes-
sional's testimony served the independent purpose of providing background
information and laying the foundation for the introduction of physical evidence
included in the sexual assault evidence kit, and the probative value of her
testimony outweighed any potential prejudice. [398-401] MARSHALL, C.J.,
concurring, with whom BOTSFORD and GANTS, JJ., joined.

At a criminal trial, the prosecutor, in closing argument, properly commented
to correct an erroneous impression created by opposing counsel concerning
scientific evidence, and did not mischaracterize certain evidence. [401-403]

A criminal defendant failed to demonstrate that trial counsel was ineffective
for failing to file a motion to suppress [403-405] or for allegedly abandon-
ing the theory of defense in his closing argument [405].

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 12, 2004.

The cases were tried before *Linda E. Giles*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Edward J. O'Brien* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. A jury found the defendant, Joshua Dargon, guilty of aggravated rape, G. L. c. 265, § 22 (*a*); indecent assault and battery on a person over age fourteen, G. L. c. 265, § 13H; assault and battery, G. L. c. 265, § 13A; and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (*b*). The defendant appealed. The Appeals Court affirmed the convictions (see *infra*), and we granted his application for further appellate review. The defendant challenges the admission in evidence of a written form that was part of a sexual assault evidence kit and that included notations of statements made by the victim. He also argues that the prosecutor's closing argument was improper and that his counsel was ineffective. We affirm the defendant's convictions.

*Background.* From the evidence presented at trial, the jury could have found the following. On February 13, 2004, the victim, an elementary school teacher, returned to her home in a Wareham condominium complex around 7 P.M. She walked into the foyer of her building, a lobby-like area with call boxes and a locked interior door. She was carrying a bag of papers to correct, her purse, and gifts from students. Inside, she saw a man, whom she later identified as the defendant, facing the call boxes. As she went to unlock the interior door, the defendant grabbed her from behind, putting his arm around her neck and his hand over her mouth. He punched her forcefully several times in the head and, after she fell to the ground, pinned her to the floor with his knee on her stomach and continued to punch her. He kicked her in the head with his sneakers repeatedly. The defendant then reached up her shirt and fondled her breasts. She struggled and scratched at his neck, ripping off his necklace, which fell to the floor. The defendant put his hand down the front of her pants inside her underwear, tore the underwear, placed his finger into her vagina for a few seconds, kicked her again, and then placed his hand down the back of her pants, touching her anus without penetrating it.

On the same evening around 7 or 7:15 P.M., the victim's neighbor in the condominium building heard strange noises and went downstairs. In the foyer, she saw a man wearing a blue jacket with a white stripe punching and kicking the victim. The neighbor shouted at the man to stop and raced toward him. The man dropped the victim's purse and ran out the door toward the waterfront.

At 7:26 P.M., the neighbor's fiancé, who had come down to the foyer, telephoned 911 from a portable telephone, and with the neighbor's assistance, the victim spoke to the 911 operator. She told the operator that an attacker had groped her breast and taken her purse. She did not mention digital penetration.[1]

Officer Daniel Flaherty of the Wareham police department arrived at the scene within minutes of the 911 call. While waiting for the paramedics to arrive, the victim gave him a physical description of the attacker — a white male, medium build, approximately five feet, ten inches tall, wearing a blue ski jacket with white stripes down the side — which Flaherty broadcast. Officer Herbert Noble heard that broadcast and drove toward the scene. About a mile from the victim's residence, Noble saw the defendant, whose appearance generally matched the broadcast description he had heard, walking toward the waterfront. After Noble had engaged in some conversation with the defendant, other police officers instructed him to bring the defendant back to the condominium building to attempt a "show-up" identification. In the better lighting at the condominium complex, Noble saw fresh, red scratch marks on the defendant's neck. The victim's neighbor identified the defendant's jacket as the one the attacker wore, but she did not identify the defendant himself.

At this point, the victim was no longer present, having been taken to Tobey Hospital by ambulance. Sergeant John Walcek of the Wareham police obtained the defendant's name and address and read him his Miranda rights. Two police officers then took the necklace found on the floor of the condominium foyer to the defendant's home, where the defendant's brother and mother identified it as belonging to the defendant. Based on that identifi-

---

[1] A recording of that telephone call was played at trial and admitted as first complaint evidence, with instructions pursuant to *Commonwealth* v. *King*, 445 Mass. 217, 247-248 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*).

cation, he was arrested and taken to the police station for booking. At the station, police interviewed the defendant after giving him Miranda warnings for a second time. He told the police that he had been in the victim's condominium building, that he tried to take her money, that he pushed her, and that he probably touched her breasts in doing so. He denied putting his hands in the victim's shirt or pants and told police that what happened was not sexual.[2]

At around 10:30 P.M. on February 13, Mary Griffin, a nurse practitioner employed by the Department of Public Health as a sexual assault nurse examiner (SANE), was called to Tobey Hospital to perform a sexual assault examination of the victim and to collect evidence relating to sexual assault. With the victim's consent, Griffin performed the examination and recorded the results on a set of forms that were part of a "Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit." One of the forms in the set, designated Form 2, was admitted in evidence as an exhibit.[3] In addition, Griffin collected swabs, fingernail scrapings, and other evidence and placed that evidence in the collection kit (referred to at trial as a SANE kit or rape kit). During the examination, the victim was crying and shaking. She had a number of "big huge swollen lumps" on her head. The examination of her genital area reflected that it was "[w]ithin normal limits," meaning, Griffin stated, that there was no "redness, swelling, a tear, a rip, or semen."

The defendant stipulated at trial that he was the man who had assaulted the victim in the foyer on February 13, 2004. He denied, however, that the attack was sexual. The jury found the defendant guilty of all four crimes with which he was charged. The Appeals Court affirmed the convictions, see *Commonwealth* v. *Dargon (No. 1)*, 74 Mass. App. Ct. 330 (2009); *Commonwealth* v. *Dargon (No. 2)*, 74 Mass. App. Ct. 1114 (2009).[4]

*Discussion.* 1. *Admission of Form 2.* The defendant argues

---

[2] In a written statement the defendant gave police, he wrote, "I meant no harm and regret my mistake and accepting all charges for my stupidity." At that time, the defendant had not yet been charged with rape.

[3] The admission of Form 2 is central to one of the defendant's claims on appeal, and we include additional facts relating to it in our discussion of that claim, *infra.*

[4] The Appeals Court separated the issues the defendant raised in his appeal to that court, considering some in a published opinion and others in a

first that the admission of Form 2 from the SANE kit constituted reversible error for two reasons: the admission violated the limitations of the hospital records admissibility statute, G. L. c. 233, § 79; and it contravened the first complaint rule set out in *Commonwealth* v. *King*, 445 Mass. 217, 241-248 (2005), cert. denied, 546 U.S. 1216 (2006) (*King*). We begin with the factual context.

a. *Additional facts.* Form 2 is a two-page printed form that has printed at the top:

"FORM 2 *INFORMATION PERTAINING TO ASSAULT*
"Commonwealth of Massachusetts
"Sexual Assault Evidence Collection Kit"

Below the title are eight separate sections, each with a different descriptive title.[5] Each section contains printed questions followed either by a line on which the examiner may write information, or by a series of boxes the examiner may check. In this case, Griffin completed the form by hand, writing in words or phrases and checking boxes based on information supplied by the victim. One copy of Form 2 is to be retained, and it was in this case, as part of a victim's hospital record; a duplicate copy is kept in an envelope in the sexual assault evidence collection kit.

The defendant filed a motion in limine before trial in which he argued that the victim's statements that Griffin had quoted or paraphrased on Form 2 (victim's Form 2 statements) — including, among others, those set out immediately above — as well

memorandum and order issued pursuant to its rule 1:28. In the latter opinion, *Commonwealth* v. *Dargon (No. 2)*, 74 Mass. App. Ct. 1114 (2009), the Appeals Court addressed the defendant's claims concerning alleged insufficiency of evidence and the denial of his motion to suppress statements he made to police after receiving and waiving his Miranda rights. These issues are not before us on further appellate review.

[5] The sections include (1)"Patient Information," which contains questions about "Date of Assault," "Approx. time of Assault," "City/Town of Assault," and "Specific surroundings at time of Assault"; (2) "Assailant(s) Information"; (3) "Acts Described by the Patient"; (4) "Weapons/Force Used"; (5) "Case Status of the Exam," which has questions asking whether the case has been reported to police and whether restraining orders were in place before or after the "assault"; and (6) "Mandatory Reporting," asking whether certain reports have been filed, including a "Provider Sexual Crime Report," elder abuse report, disabled person report, child abuse report, or weapon report.

as additional statements of the victim appearing on a separate Form 3, a one and one-half page narrative entitled "Patient's Report of the Incident," should be excluded from evidence.[6] Defense counsel argued that, as a SANE nurse employed by the Department of Public Health, Griffin examined the victim to gather evidence, rather than to provide medical treatment. He further contended that the victim's statements contained in both Form 2 and Form 3 violated the first complaint rule set out in *King, supra,* and also constituted inadmissible hearsay. The judge excluded Form 3 in its entirety, but allowed Form 2 to be introduced, after partial redaction, as "germane to medical treatment and history."[7,8]

The version of Form 2 that was before the jury retained the full title, "Commonwealth of Massachusetts Sexual Assault Evidence Collection Kit: Information Pertaining to Assault." It contained the sections and section titles previously described (see note 5, *supra*), including the "Acts Described by the Patient" section, where Griffin indicated the "assailant" had "covered [the victim's] mouth with his hands, put his hand in the vagina area, put his finger in her vagina, hand between buttocks, hands

---

[6]With respect to Form 2, defense counsel focused on the following statements:

> "Form 2 contains comments . . . like covering her mouth with his hands, put his hand in the vaginal area, put his finger in the vagina, hand between the buttocks. And on the second page where the weapons [or] force used, she said he said, 'Shut up.' Repeatedly hit and kicked her in the head, held her down with his knees. He overpowered her. 'Bigger than me.'"

The judge ordered some of these statements redacted. See note 8, *infra*.

[7]The judge did not specifically cite it, but it is clear from her statements that she was basing her ruling on G. L. c. 233, § 79, which states in relevant part: "Records kept by hospitals . . . under [G. L. c. 111, § 70,] shall be admissible . . . so far as such records relate to the treatment and medical history of such cases . . . but nothing therein contained shall be admissible as evidence which has reference to the question of liability."

[8]The judge explained:

> "Under the section 'Weapon/Force [U]sed,' the phrase, 'He said Shut up, many times,' has nothing to do with treatment or history. But everything else would be germane to a provider as to the injuries that she sustained. . . . The last phrase, he over powered her, 'bigger than me,' I don't think is germane to that consideration. So that phrase will also be redacted."

up her shirt and 'groped' her breasts"; and the "Weapons/Force Used" section, where Griffin had checked a box for "[c]hoking" and elaborated, "initially grabbed her neck 'to get me to the ground' "; checked a box for "[h]itting" and wrote, "[r]epeatedly hit and kicked her in the head, [h]e slammed her head onto the ground many times"; and checked a box for "[r]estraints" and noted, "he held her down with his knees with her arm under his knee and her leg under his knee."

Griffin testified at trial. On direct examination, she first explained generally the purpose and procedures of the SANE examination and evidence collection program. She explained that SANE nurses such as herself are paged by hospitals "whenever there is a sexual assault patient that presents to the [emergency room]" and that they provide and coordinate the patient's medical case relating to the sexual assault. She also testified about collecting specimens, swabs, and other evidence for the SANE kit, and about notifying the police to pick up the kit for transfer to either the State police crime laboratory or the Boston police crime laboratory. Griffin then described her examination of the victim in this case. She testified about her observations of the victim's demeanor, detailed the results of her physical examination of the victim, and described the evidence collected (victim's underwear) and not collected (her outer clothing). Griffin did not testify about any of the specific information, including statements of the victim, that she had written down on Form 2, but the form had previously been admitted as an exhibit.

b. *Analysis.* (i) *Challenge under G. L. c. 233, § 79.* The defendant first argues that the judge should have excluded Form 2 on the ground that it fell outside the scope of evidence admissible under G. L. c. 233, § 79 (see note 7, *supra*), because it was a record used for purposes of criminal investigation and prosecution and not, as the judge found, for purposes of treatment or medical history. Alternatively, he claims that even if § 79 covers Form 2 generally, here Form 2 contains hearsay and statements pertaining to culpability that should have been redacted.

At trial, defense counsel challenged Form 2 in a motion in limine and objected when it was admitted as an exhibit during

the direct examination of the victim at trial, when the prosecutor used it to refresh the Griffin's recollection, and again after the direct examination of Griffin. His objections went to the substance of the victim's statements as recorded by Griffin, but not to the printed language on Form 2 itself. We therefore review any error in the admission of those statements under the prejudicial error standard, *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), and any error based on the form itself for a substantial risk of miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

"Section 79 of G. L. c. 233 permits the admission in evidence, in the judge's discretion, of certified hospital records 'so far as such records relate to the treatment and medical history' with the proviso that 'nothing therein contained shall be admissible as evidence which has reference to the question of liability.' " *Commonwealth* v. *Dube*, 413 Mass. 570, 573 (1992), quoting G. L. c. 233, § 79. See Mass. G. Evid. § 803(6)(B) (2010). We have treated the reference in § 79 to "liability" as encompassing criminal culpability. See *Commonwealth* v. *Dube*, *supra*, and cases cited.

We construe G. L. c. 233, § 79, liberally. *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998). Thus, a "record which relates directly and mainly to the treatment and medical history of the patient, should be admitted, even though incidentally the facts recorded may have some bearing on the question of liability." *Id.*, quoting *Commonwealth* v. *Concepcion*, 362 Mass. 653, 656 (1972). See, e.g., *Commonwealth* v. *Dube*, *supra* at 570-574 (in prosecution of operating while under influence, hospital record showing defendant's blood alcohol content as determined by routine test performed during course of treatment following accident was admissible under § 79); *Commonwealth* v. *Franks*, 359 Mass. 577, 580-581 (1971) (results of test for presence of sperm on alleged rape victim, containing "only medical facts as of the date of examination," were admissible under § 79 even though test was performed for purpose of court appearance).

Even under our liberal reading, "ultimate conclusions concerning the charged crimes" must be redacted. *Commonwealth* v. *Dwyer*, 448 Mass. 122, 137 (2006). "An unqualified statement,

enhanced with a cloak of professional and institutional author-
ity, that the very crime which the prosecution is bound to prove
has occurred, acquires considerable potency." *Commonwealth* v.
*DiMonte*, 427 Mass. at 242, quoting *Commonwealth* v. *Baldwin*,
24 Mass. App. Ct. 200, 202 (1987). See, e.g., *Commonwealth* v.
*DiMonte*, *supra* at 241, 242 (notations on hospital intake form
stating that patient was "assaulted" should have been redacted);
*Commonwealth* v. *Baldwin*, *supra* (new trial warranted where
"diagnosis" of "sexual molestation," term "synonymous to lay-
men with indecent assault and battery," was not redacted).[9] We
distinguish, however, "a 'conclusory fact central to the jury's
inquiry' from 'physical observations from which inculpatory
inferences flow.' " *Commonwealth* v. *DiMonte*, *supra* at 242,
quoting *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. at 202.[10]

We consider Form 2 with these principles in mind. Griffin
testified that as a SANE nurse she uses Form 2 to gather infor-
mation for the crime laboratory and also to decide whether a
sexual assault victim needs medical attention. She elaborated:

> "Based on their history and what they tell us . . . we
> know the right areas to swab, the right areas to examine,
> what type of medication they may need, whether they
> need a tetanus, whether they need hepatitis B, whether
> they need HIV post exposure prophylaxis, if they could
> need the pregnancy prophylaxis, sexually transmitted
> disease protection as well."

Under our traditionally expansive reading of G. L. c. 233, § 79,

---

[9]But see *Commonwealth* v. *Concepcion*, 362 Mass. 653, 654-656 (1972) (in
hospital record where "[a] under the heading 'Nature of Illness' appear the
words '? Assaulted — ? Raped'; [b] under the heading 'History and Physical
Exam,' appear the words 'History of recent rape'; and [c] under the heading
'Diagnosis' appears the notation '? Rape,' " court concluded that "doctor's
tentative opinion is sufficiently related to the treatment and medical history so
that it cannot be said that its admission [under § 79] constituted an abuse of
discretion").

[10]In *Commonwealth* v. *DiMonte*, 427 Mass. 233, 242 (1998), we held that,
unlike the inadmissible conclusion that the patient was "assaulted," several
"fact-specific references to the reported cause of . . . injuries" were admis-
sible even though they were "incidental to liability." Such references included
"Pt. struck in the face [with] fist" and "reports having a plastic container
thrown [at] her which struck her [right] forehead." *Id.* at 241.

the dual purpose of Form 2 does not preclude its admission. See *Commonwealth* v. *Franks*, 359 Mass. at 579.

Nor is Form 2 rendered inadmissible because it contains Griffin's notations of the victim's statements explaining how she received her injuries. General Laws c. 233, § 79, "makes admissible only those portions of records relating to treatment and medical history which possess the characteristics justifying the presumption of reliability." *Bouchie* v. *Murray*, 376 Mass. 524, 528 (1978). Nevertheless, a "patient's own account of [her] medical history generally would be admissible because of the presumptive reliability of the patient's statement to a physician consulted for treatment." *Id.* at 529. See Mass. G. Evid. § 803(4) (2010). Here, the victim's descriptions of the acts she claims occurred constitute "fact-specific references to the reported cause of [her] injuries" made for purposes of obtaining medical treatment; these statements were thus admissible even though "incidental to liability." *Commonwealth* v. *DiMonte*, 427 Mass. at 242. And, because the statements are admissible under § 79, the statute removes any hearsay objection to them, the defendant's contrary argument notwithstanding.

However, there is merit to the defendant's contention on appeal that the printed language of Form 2 itself crosses over the line to become references to culpability. Form 2 bears the title "Sexual Assault Evidence Collection Kit," suggesting that a sexual assault did, in fact, occur. The printed questions included on Form 2 contain conclusory terms, such as "assault" and "assailant," which the Commonwealth concedes should have been redacted. In fact, the words "assault" and "assailant" appear, combined, a total of twenty-three times on the two-page form. Failure to redact this language and the title of Form 2 was error.[11,12] Cf. *Commonwealth* v. *Baldwin*, 24 Mass. App. Ct. at

[11]While the dual purpose of Form 2 does not preclude its admission, as discussed above, additional sections of Form 2 pertaining solely to the investigative purpose should also have been redacted. This includes the "Case Status of the Exam" and "Mandatory Reporting" sections, which do not contain information relevant to medical treatment.

[12]The Appeals Court did not decide whether Form 2 qualified for admission under G. L. c. 233, § 79, and held instead that the "statements recorded on Form 2 were properly admitted to rebut the claim of recent contrivance." *Commonwealth* v. *Dargon (No. 1)*, 74 Mass. App. Ct. 330, 335, 338 (2009). At trial, the Commonwealth did not argue that Form 2 was admissible to rebut

202 (improper "diagnosis" of "sexual molestation" did not "have the equivocal quality of the record entries in *Commonwealth* v. *Concepcion*, 362 Mass. 653, 654 [1972]" [see note 9, *supra*]).

Because the defendant's objections at trial went to the substance of the victim's Form 2 statements, and the error here stemmed not from admission of those statements, but rather from the failure to redact the language of Form 2 itself, we review for substantial risk of miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. at 563-564. That is, "we review the evidence and case as a whole and ask four questions: '(1) Was there error? . . . (2) Was the defendant prejudiced by the error? . . . (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?' " *Commonwealth* v. *McCoy*, 456 Mass. 838, 850 (2010), quoting *Commonwealth* v. *Randolph*, 438 Mass. 290, 298 (2002).

We have already determined that failure to redact the "sexual assault" title, the references to "assault" and "assailant" that permeated Form 2, and the sections pertaining solely to criminal investigation was error. Second, the error was prejudicial to the defendant because Form 2 was the template on which the victim's statements about the assault were presented, and the language of the form served to reinforce the statements' message that the assault was sexual in nature. Cf. *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 494 (2009) ("The very phrasing of the detective's description of [Sexual Abuse Intervention Network]

---

a theory of recent contrivance, and therefore the judge had no occasion to determine whether a claim of recent contrivance was properly made or whether the form was an appropriate way to counter that claim. See *Commonwealth* v. *Almeida*, 42 Mass. App. Ct. 607, 614-615 (1997). Moreover, defense counsel had no opportunity to request appropriate limiting instructions. See *Commonwealth* v. *Martinez*, 425 Mass. 382, 396-397 (1997) (prior consistent statements, admissible to impeach claim of recent contrivance if made before witness had incentive to fabricate, are not admissible to prove truth of matter). If presented with the issue, the judge might well have found the statements on Form 2 admissible to rebut a theory of recent contrivance: defense counsel suggested in his opening statement that the victim failed to report the digital penetration to her neighbor, the dispatcher, the police, the paramedics, the treating nurse, or the doctor, and he returned to this theme in his closing. But an appellate court cannot make that determination after the fact on appeal.

interviews conveyed that they are convened when persons are thought to be victims of sexual assault"). As to the fourth inquiry, counsel's failure to object to the language of Form 2 or specifically to request redactions of the offending language was not a reasonable tactical decision.

The third inquiry — whether we can reasonably conclude that the error materially influenced the verdict — presents a more difficult question. For reasons we have stated, the victim's Form 2 statements would be substantively admissible standing alone. Had those statements been admitted after proper redaction of Form 2, they would have provided powerful evidence on their own that a sexual assault and rape occurred. When the prosecutor, in closing argument, directed the jury's attention back to Form 2, he referenced only these admissible statements: "[L]ook at the records of the examination . . . . The answer to the question on one of the pages of Mary Griffin's documents, 'Did assailant touch the patient with bare hands or fingers?' . . . 'Put his finger in her vagina.' *That's the rape*" (emphasis added). Moreover, as the Commonwealth points out, the defendant conceded that he assaulted the victim; at issue was only whether that assault was a sexual one. This diminishes the impact of the "assault" and "assailant" language in this particular case (although does not remove the prejudice from the "*sexual* assault" reference in the title of Form 2).

Finally, the Commonwealth's case against the defendant was very strong. The defendant admitted that he had assaulted the victim, and the evidence showed the admitted assault to be violent. The evidence that the assault was also sexual and involved digital rape included the victim's admissible statements on Form 2, her testimony at trial, and physical evidence, namely, her ripped underwear. In the circumstances, we cannot say that the error materially influenced the verdicts. And because this is so, we conclude that the error in failing to redact more portions of Form 2 did not give rise to a substantial risk of a miscarriage of justice.[13]

(ii) *First complaint.* We turn to the defendant's argument that

---

[13]We add a final comment concerning Griffin's testimony explaining the SANE kit and the sexual assault examination process. It is not improper, as a general matter, to introduce testimony explaining the SANE process, either to provide background for testimony of a SANE nurse such as Griffin or to lay a

the victim's Form 2 statements, even if admissible under G. L. c. 233, § 79, taken together with Griffin's testimony, amounted to a prejudicial "piling on" of sexual assault complaint testimony, prohibited by this court's decision in *King*, 445 Mass. at 242-243. As defense counsel preserved his objection on this ground, we review under the prejudicial error standard. *Commonwealth* v. *Flebotte*, 417 Mass. at 353. That is, the Commonwealth must show that any error "did not influence the jury, or had but very slight effect." *Id.*, quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

In *King*, we introduced the first complaint doctrine, under which we "no longer permit in evidence testimony from multiple complaint witnesses, limiting the testimony to that of . . . the first person told of the assault." *King*, 445 Mass. at 242-243. But the first complaint doctrine "is not intended to be used as a shield to bar the jury from obtaining a fair and accurate picture of the Commonwealth's case-in-chief." *Commonwealth* v. *Arana*, 453 Mass. 214, 228-229 (2009). Evidence of a subsequent complaint may be admissible under an evidentiary rubric other than first complaint. *Id.* at 220-221. See *Commonwealth* v. *McCoy*, 456 Mass. at 845, 847, 850.

Evidence of a "subsequent complaint is not admissible simply because a separate evidentiary rule applies (e.g., the statement is not hearsay, or it falls within an exception to the hearsay rule)." *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. at 495. See *Commonwealth* v. *Arana*, 453 Mass. at 227-228 & n.21; *Commonwealth* v. *McGee*, 75 Mass. App. Ct. 499, 503-504 (2009). If independently admissible evidence, "other than that specifically and properly designated as first complaint testimony, serves no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations, it is

foundation for the admission of physical evidence in a SANE kit. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 847 (2010). However, Griffin's particular testimony at times suggested a system that operates under the assumption that every person who complains of sexual assault has in fact been assaulted. Care needs to be taken to avoid the creation of such an impression. When a SANE kit is introduced as an exhibit or when testimony is offered concerning the SANE examination process, the judge, on request, should explain to the jury that SANE examinations occur when there is an allegation or complaint of sexual assault; and the fact that the examination occurred, by itself, does not constitute evidence or any indication that the complaint is valid.

inadmissible." *Commonwealth* v. *Arana, supra* at 229. See *Commonwealth* v. *McCoy*, 456 Mass. at 846-847. However, if that evidence does serve a purpose separate and apart from the first complaint doctrine, the judge may admit it "after careful balancing of the testimony's probative and prejudicial value." *Commonwealth* v. *Arana, supra*. We review the judge's evidentiary ruling for abuse of discretion.

Applying these principles here, we ask whether the independently admissible evidence served a purpose other than to corroborate the victim's accusation, and whether that evidence was sufficiently important to a fair understanding of the Commonwealth's case that its probative value outweighed potential prejudice to the defendant.

As to the first inquiry, the victim's Form 2 statements, independently admissible under G. L. c. 233, § 79, served the independent purpose of establishing essential elements of the Commonwealth's aggravated rape case, which here required proof of sexual intercourse and substantial bodily injury. See G. L. c. 265, § 22 (*a*). Additionally, the statements provided a complete picture of the timing of the complaint of digital penetration, particularly important where defense counsel challenged the victim's credibility in his opening statement.[14] As to the second inquiry, for the reasons just mentioned, the victim's Form 2 statements were sufficiently important to a fair under-

___

[14]In his opening statement, defense counsel told the jury:

"She passes one, two, three, four, please count, the number of people that she passes that she has an opportunity to tell that she was raped. She never says, 'I was raped.' She doesn't say it to her neighbor. She doesn't say it to the dispatcher. She doesn't say it to the two police officers that arrive. She doesn't say it to a male and female nurse paramedic. The nurse paramedic is in back with her. She doesn't say it to the triage nurse. She doesn't say it to the treatment nurse. She doesn't say it to the doctor."

In closing argument, defense counsel revisited this theme:

"[W]hen you are listening to the 911 tape — listen to it carefully. At the time she has an opportunity to tell the police what happened. And this is consistent throughout the entire event, the whole six hours that all this is going on. It's 7:30 at the time, to 1:30 when the SANE nurse leaves. There is a consistent statement that you heard all throughout this."

standing of the Commonwealth's case to warrant their admission because the central issue in the case was whether the assault was sexual. Cf. *Commonwealth* v. *Jaime*, 433 Mass. 575, 579 (2001) ("in balancing the probative value against the risk of prejudice, the fact that evidence goes to a central issue in the case tips the balance in favor of admission").

With respect to Griffin's testimony, on direct examination, she described the SANE examination process generally and her examination of the victim in particular, including the victim's demeanor and injuries and the evidence collected. Although Griffin did not testify about any specific information, including the victim's statements, that she recorded on Form 2, her testimony did convey the fact of the complaint. See *Commonwealth* v. *McCoy*, 456 Mass. at 846-847. Nonetheless, her testimony did not serve solely to bolster the victim's credibility but rather "served the independent purposes of providing background information and laying a foundation for the admission of physical evidence included in the sexual assault examination kit," *id.* at 847, which here included the victim's ripped underwear. Given the centrality of the issue, the importance of the evidence that Griffin's testimony put in context, and the challenge to the victim's credibility, the probative value of Griffin's independently admissible testimony outweighed any potential prejudice. There was no abuse of discretion in admitting this evidence.

2. *Closing argument.* The defendant next contends that the prosecutor made improper statements in closing argument that require reversal of his convictions. He claims first that the prosecutor shifted the burden to the defendant by calling the theory of defense a "red herring" and a "classic blame the police" tactic. The claim relates to the prosecutor's statement made in response to an argument by defense counsel about deoxyribonucleic acid (DNA) evidence. Defense counsel objected to the prosecutor's critique of defense counsel's suggestion that police should have conducted a DNA test of the defendant's fingernails, but he did not object to the specific statements challenged here. In any case, there was no impropriety. As the prosecutor correctly argued, the evidence did not support defense counsel's suggestion that DNA swabs could have exonerated the defendant. Defense counsel elicited testimony during trial that police did not swab

the defendant's fingernails, but he did not call a DNA expert, and the jury heard no evidence that DNA evidence could show which part of the victim's body the defendant had touched. A prosecutor may not "simply 'fight fire with fire' and exceed the normally proper limits of argument because defense counsel made an improper, excessive argument." *Commonwealth* v. *Kozec*, 399 Mass. 514, 519 (1987). However, "a prosecutor may properly comment to correct 'an erroneous impression created by opposing counsel.' " *Id.* at 519 n.9, quoting *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982).

The defendant also claims the prosecutor mischaracterized evidence by suggesting that the defendant made a full confession in the statement he gave police, when in reality, the defendant admitted to attacking the victim but denied any sexual assault. The defendant takes issue with the following part of the prosecutor's summation, which addressed the fact that police did not record the defendant's statement:

> "And with regard to the recording of the defendant's statement, we have ample testimony from Detective DeSilva, I'm going to suggest to you, to indicate the way that that interview process went forward. And prior to the ruling in [*Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-448 (2004)], the case that makes clear that [police interrogation] should be, going forward from that date, should be recorded. He explained to you the circumstances of the station that night. He explained that this was pre-*DiGiambattista*, the date that this incident took place. And furthermore, you heard the statement the defendant gave, which frankly couldn't have been more self-serving by the defendant. That statement that was written out. There's no indication in here that — *full confession by the defendant*. He admitted to everything. Oh and by the way, we didn't record it.

> "The statement that Detective DeSilva testified to, and the written one that you're actually going to have in the jury room, I suggest to you when you assess all the circumstances, was it voluntary, you've got a written signature on a waiver form. . . . And you know that he gave an incredibly self-serving and frankly deceptive account of

what had supposedly happened that evening." (Emphasis added.)

Considering the "full confession" language in context, it is clear that the prosecutor was arguing that the police testimony concerning the defendant's statement should be deemed credible even without a recording because it described a very limited (and self-serving) account. Defense counsel did not object to this portion of the prosecutor's closing, and rightly so. Reasonable jurors who had heard the trial evidence would not have construed the prosecutor's argument as suggesting that the defendant made a full confession. In calling the defendant's statement "self-serving" twice, it was evident that the prosecutor was not suggesting a confession of a rape, as there would have been nothing self-serving about a such a confession. Again, there was no impropriety.

3. *Ineffective assistance.* The defendant's final claim is that his counsel was ineffective for not moving to suppress evidence based on the allegedly illegal stop of the defendant on the night of the incident, and by abandoning the theory of defense in his closing argument.

To prevail on an ineffective assistance claim, the defendant must establish that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer"; and that such behavior "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Because the defendant raises these claims for the first time on direct appeal, their factual basis must appear "indisputably on the trial record" for us to resolve them. *Commonwealth* v. *Zinser*, 446 Mass. 807, 811 (2006), quoting *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994). Our review of the record before us leads us to conclude that the defendant did not establish that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

a. *Suppression motion.* The defendant argues that his counsel was ineffective for failing to move to suppress the defendant's necklace and statements to police on grounds that Officer Noble

stopped him without reasonable suspicion, where he matched only a general description of the assailant and was walking a mile away from the scene of the attack.[15]

"[T]o prevail on an ineffective assistance of counsel claim on the ground of failing to file a motion to suppress, the defendant has to demonstrate a likelihood that the motion to suppress would have been successful." *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004). The defendant must show that "had such a motion been timely filed, the Commonwealth would not have been able to prove that a warrantless stop was constitutional." *Id.* at 93.

As an initial matter, defense counsel could not have prevailed on a motion to suppress the necklace because the police recovered it from the crime scene floor of the condominium foyer — not from the defendant after the stop. Because the necklace was not "discovered in a 'search' in the Fourth Amendment [to the United States Constitution] sense of that word, the defendant was not entitled to its suppression." *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990).

The defendant does not specify what statements he believes his counsel should have challenged on unlawful stop grounds. In any case, and putting aside the evidence that the defendant voluntarily entered the police cruiser and was not "stopped," the record establishes that the Commonwealth could have shown that Noble had reasonable suspicion, considering the totality of the circumstances, to stop the defendant. Noble received a report of a serious crime, learned from officers at the scene that the assailant wore a blue jacket with white markings and had fled toward the waterfront, and saw the defendant, who matched that description, walking in the direction of the waterfront a mile from the scene. See *Commonwealth* v. *Acevedo*, 73 Mass. App. Ct. 453, 458, *S.C.*, 455 Mass. 1013 (2009). Contrast *Commonwealth* v. *Cheek*, 413 Mass. 492, 496 (1992). Additionally, it was not unreasonable for Noble to transport the defendant to the scene for an identification procedure. See *Commonwealth* v. *Barros*, 425 Mass. 572, 583-584 (1997). The defendant has not

---

[15]Defense counsel moved to suppress statements the defendant made to police after receiving and waiving his Miranda rights, and a hearing was held on that motion. See note 4, *supra*.

satisfied his burden to show that a motion to suppress would have prevailed. *Commonwealth* v. *Comita*, 441 Mass. at 91-93.

b. *Closing argument.* The defendant asserts that his counsel "jettisoned" the theory of defense in closing argument by "telling the jury that the Commonwealth's case of rape makes sense because it was an impulsive act."[16] The thrust of defense counsel's argument was not, as the defendant now contends, that he committed a rape on impulse. Rather, defense counsel painted a picture of an impulse attack to obtain money, rather than a planned sexual assault.

*Judgments affirmed.*

MARSHALL, C.J. (concurring, with whom Botsford and Gants, JJ., join). I agree that the result in this case is consistent with our decision in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), but write separately to reiterate my concern that the first complaint doctrine is not necessary to address the issues set forth in that case. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 855 (2010) (Marshall,

---

[16]The defendant points to the following part of the closing argument: "Well, why, why, if you're going to go out there to rape somebody, if you're going to go out there to fondle somebody, why wouldn't you pick the parking lot? . . . Why would you go in a glass portion, a lobby portion, where all the buzzers are, where anybody who hears a scream can basically press the buzzer? 'Who's there?' You can hear what is being said. It makes no sense, *unless its an impulsive act.*"

We must consider this excerpt in the context of what defense counsel said just before, as well as after. Immediately before the section quoted above, counsel stated: "I told you that it was an impulsive act. And you heard testimony that an eighteen year old kid says, 'I wanted to get something for my Mommy'. . . . Is he allowed to do that? No. He can't just go out and take it. He can't."

Then, after making the portion of the argument on which the defendant focuses, counsel continued: "He goes to [the condominium building]. He's in there. He sees her. He sees the money. He sees the bags. He sees the gifts. And he goes after her. She fights him. And he fights her. She has a right to fight him. He doesn't have a right to do what he did. . . . If his intent was to go there and rape her and fondle her, it makes no sense that he would choose there. . . . I ask you to look hard at the evidence. . . . And I think you will find that it was not a sexual assault. It was a fight over her bag that got out of control and it's his fault. But it wasn't a sexual assault."

C.J., concurring). This case is another example that, in the absence of the first complaint doctrine, there are a "myriad of ways of admitting potentially powerful evidence that 'includes, or implies, the fact that a report was made,' . . . which can counterbalance juror stereotypes." *Id.* at 856 (Marshall, C.J., concurring), quoting *Commonwealth* v. *Arana*, 453 Mass. 214, 224 (2009). I would revisit the doctrine when a case arises that presents the issue squarely, when the parties have fully briefed the issue, and when the court has had an opportunity to request briefing from amicus curiae.