NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1197

COMMONWEALTH

vs.

MICHAEL SQUADRITO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Michael Squadrito, appeals from his conviction of rape after a jury trial in the Superior Court. For the first time on appeal, the defendant objects to the prosecutor's closing argument and to the admission of references to "sexual assault" in both the victim's medical records and the testimony of the emergency room nurse.  Discerning no substantial risk of a miscarriage of justice, we affirm.

Background.  On an evening in November 2018, the victim went to dinner with a friend and then to a series of bars in Boston.  The victim drank several beers, several mixed drinks, and several shots of tequila.  At about 2:30 A.M., the victim left a bar near Quincy Market.  She was extremely drunk.  Using her cell phone, she ordered a ride service to take her to her

home address.  The car arrived at 2:45 A.M., driven by the defendant, and the victim got into the back passenger seat.

The next thing the victim knew, she awoke with the defendant on top of her, thrusting his penis into her vagina. His mouth was on her neck, and her jeans and underpants were on the ground.  The defendant said, "I think we're done here," and offered the victim a ride home.  The victim said, "Absolutely not," got out of the car, put on her pants, and ran in the opposite direction from which the defendant's car was headed so she could get away as quickly as possible.

Beginning at 3:23 A.M., the victim telephoned her friend eight times and then her sister, but neither of them answered. At 3:29 A.M., the victim telephoned her mother and, sobbing, said she had been raped by a ride service driver.  The victim saw a subway station, realized she was near her home, and told her mother where she was.  When the mother found the victim, she asked if it was possible that the victim had consented, because the mother did not want to believe that the victim had been raped; the victim replied, "no."[1]

The mother took the victim to a Boston hospital. Examination showed a bite mark to the victim's neck that later

---

[1] On cross-examination of the mother, defense counsel asked if "it wouldn't be so bad" if the victim had consented, and the mother replied, "If she consented.  She's an adult.  She can have sex with whoever she wants to."

tested positive for amylase, a component of saliva.  The victim

had pelvic pain; redness to six areas of her genitals, including

her labia and vaginal canal; and swelling of her perianal skin.

The victim's blood alcohol level was between .176 and .27.

Testing on a swab collected from the victim's vagina later

revealed sperm cells containing a DNA profile that matched the

defendant's.[2]

Meanwhile, the defendant kept driving for about three

minutes until he was near a strip mall where at 3:25 A.M. he

notified the ride service that the ride had terminated.  He did

not pick up any more passengers that night.  He lived with his

mother and was driving her car, but he did not go home that

night.  Later that day, the defendant spoke to police several

times by telephone and promised that he would come to the police

station, but he did not appear.

The defense theory was that the victim had consented to

sex.  The defendant testified that during the ride, the victim

asked him several times if he wanted to "party," and when they

neared her address, she directed him to a side street and told

him to pull over.  She motioned for him to join her in the back

seat and they kissed.  The defendant testified that the victim

verbally consented to sex, took off her own pants, and then

_____

[2] The expected frequency of occurrence of that DNA profile was
one in 2.4 nonillion Caucasians.

3

"used her hands to get my penis into her."  Later that morning, after his mother told him that police had been looking for him at her house, the defendant told his mother that he had sex with somebody.  In closing, defense counsel argued that she was "not suggesting" that the victim was "lying," but rather that the victim "drank an awful lot of booze," and so "was unable to remember" consenting to sex.  The jury convicted the defendant, and this appeal ensued.

Discussion.  1.  Prosecutor's closing argument.  For the first time on appeal, the defendant argues that in closing the prosecutor argued facts not in evidence by implying that the victim's injuries could not have been caused by consensual sex, and mischaracterized the evidence by stating that the victim's "vagina" was swollen when the medical records showed that her "[p]erianal skin" was swollen.  The defendant did not object on either ground at trial, so we review the closing argument to determine whether any error created a substantial risk of a miscarriage of justice.  See Commonwealth v. Kozubal, 488 Mass. 575, 590 (2021), cert. denied, 142 S. Ct. 2723 (2022).

a.  Reference to consensual intercourse.  In closing, the prosecutor argued that the injuries to the victim's genitals included "redness and swelling that [the defendant] would have you believe she obtained when she gently used her hand to guide his penis into her vagina during their [fifteen] minutes of

4

consensual intercourse."  The defendant argues that the prosecutor improperly asked the jury to infer that those injuries evidenced the victim's lack of consent, an inference which the defendant claims was beyond the common knowledge of jurors and therefore required expert testimony to establish. Even assuming that the prosecutor's argument could be interpreted as asserting that the victim's injuries proved nonconsent, we discern no substantial risk of a miscarriage of justice.

In closing, a prosecutor may argue the evidence and "the fair inferences which can be drawn from the evidence," but should not "misstate the evidence or refer to facts not in evidence."  Commonwealth v. Kapaia, 490 Mass. 787, 804 (2022), quoting Commonwealth v. Cheng Sun, 490 Mass. 196, 221 (2022). Inferences from the evidence that are "beyond the common knowledge of jurors" require "expert opinion to establish them." Commonwealth v. Fredette, 56 Mass. App. Ct. 253, 263 (2002) ("sweeping proposition" that sexual assault victims delay disclosure).  Without expert testimony, a prosecutor may not assert in closing an opinion about the evidence beyond what the jury can reasonably infer.  Id. at 264.  See Commonwealth v. Hrabak, 440 Mass. 650, 655-656 (2004) (prosecutor improperly argued in closing that child's rectum is flexible).

5

The Commonwealth argues that the prosecutor was simply asking the jury to find not credible the defendant's testimony that the victim consented to sex, based on evidence including the victim's injuries.  See Commonwealth v. Gardner, 102 Mass. App. Ct. 299, 312 (2023) (prosecutor properly argued that defendant's explanations for marks on victim were implausible).  See also Commonwealth v. Hoime, 100 Mass. App. Ct. 266, 279 (2021) (no error in prosecutor's closing argument which suggested that defendant's explanation of events "didn't make any sense").  According to the Commonwealth, the evidence of those injuries was inconsistent with the defendant's description of consensual intercourse during which the victim "used her hands to get my penis into her."  See Gardner, supra.  Thus, the Commonwealth contends, this was not a situation like that in Hrabak, 440 Mass. at 655-656, where a prosecutor improperly argued, without supporting expert testimony, that the lack of injury to a child victim's rectum was consistent with rape. Here there were injuries to the victim's genitals and neck that corroborated her testimony describing how the defendant inflicted them on her.

We conclude that, even if the prosecutor's argument could be interpreted as improperly asking the jury to infer that the injuries to the victim's genitals evidenced nonconsensual sex, no substantial risk of a miscarriage of justice arose.  The

6

victim testified that she awoke to find the defendant with his mouth on her neck and his penis in her vagina, and she did not consent to sex. Her testimony was corroborated by evidence including telephone records showing her frantic calls beginning two minutes before the defendant terminated the ride, her mother's first complaint testimony, and medical records and test results that revealed her high level of intoxication and the defendant's sperm inside her. In contrast, the defendant testified that the victim was alert during the ride and initiated sex with him. The prosecutor argued that the defendant's credibility was undermined by his conduct after the incident. We discern no substantial risk of a miscarriage of justice.

b. <u>Reference to swelling to areas of vagina</u>. The defendant also claims that the prosecutor mischaracterized the evidence when she argued in closing that there was "redness and swelling to areas of [the victim's] vagina." He contends that was a mischaracterization because although the medical records document redness to six areas of the victim's genitals, including the "[v]agina," they document swelling only to the "[p]erianal skin," which the defendant argues is different from the vagina. The emergency room nurse explained that the perianal skin is the "skin right in between the vaginal canal and the anus" and is "similar to the perineum," which is "the

7

skin under and around the vagina."  Based on this testimony, we conclude, even assuming error, that no substantial risk of a miscarriage of justice arose when the prosecutor referred to the broader "area[] of [the victim's] vagina," which encompassed the perianal skin.  Cf. Commonwealth v. Mazariego, 474 Mass. 42, 57 (2016) (no error in prosecutor's closing argument that injuries to labia "were in the area of [the victim's] vagina").  Moreover, the risk of any miscarriage of justice was lessened by the judge's careful jury instructions that "the arguments of counsel are not evidence" and that the jurors' memory of the evidence controls.  See id. (judge's instruction that jury's recollection of the evidence controlled cured any misstatement).

2.  References to "sexual assault" in medical records and nurse's testimony.  The defendant argues that a substantial risk of a miscarriage of justice arose when references to "sexual assault" came into evidence, both in the victim's medical records and the testimony of the emergency room nurse.  He contends that those references were "ultimate conclusions concerning the charged crimes" that prejudiced him because he raised a consent defense.  Commonwealth v. Dargon, 457 Mass. 387, 394 (2010), quoting Commonwealth v. Dwyer, 448 Mass. 122, 137 (2006).  See G. L. c. 233, § 79.  See also Mass. G. Evid. § 803(6)(B) (2023).

8

During trial, the victim's medical records were admitted without objection from the defendant, subject to certain redactions agreed by the parties.[3]  Before the exhibits went to the jury, defense counsel reviewed the redactions and stated that she was content with the medical records exhibit as redacted.  However, that exhibit contained repeated references to "assault," including a "diagnosis" of "sexual assault," and a form captioned, "Sexual Assault Evidence Collection Kit." Similarly, the emergency room nurse used the term "sexual assault" repeatedly in testifying about the hospital's protocol for treating patients who report sexual assault, including the victim.

Because the defendant did not object at trial to the references to sexual assault in the medical records and the nurse's testimony, we review the issue for a substantial risk of a miscarriage of justice.  See Dargon, 457 Mass. at 397 (unredacted references to "sexual assault" in medical records); Commonwealth v. McCoy, 456 Mass. 838, 850 (2010) (unobjected-to testimony of sexual assault nurse examiner).  To determine whether those references to sexual assault caused a substantial risk of a miscarriage of justice, we ask four questions:

_____

[3] An unredacted copy of the medical records was not marked for identification, and so we cannot determine from the record before us what redactions were made.

9

"(1) Was there error? . . . (2) Was the defendant prejudiced by the error? . . . (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? . . . (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?"

Dargon, supra, quoting McCoy, supra.

As to the first factor, the Commonwealth concedes that the failure to redact the references to "sexual assault" from the medical records was error. See Dargon, 457 Mass. at 396 (admission of identical language was error). However, the Commonwealth argues that when the emergency room nurse used the term "sexual assault" in her testimony, she was simply describing the protocol for treating a patient who reported sexual assault, and did not opine that the victim had been sexually assaulted. See McCoy, 456 Mass. at 851 (no substantial risk of miscarriage of justice from nurse testifying to victim's allegation of sexual assault, where nurse did not testify that she believed victim's allegation). Contrast Commonwealth v. McNickles, 22 Mass. App. Ct. 114, 119-120 & n.8 (1986). Having reviewed the testimony, we tend to agree, but turn to the remaining factors.

As to the second factor, the defendant argues that the references to sexual assault prejudiced him because he raised a consent defense. See Dargon, 457 Mass. at 397. We consider this factor in the context of the third factor -- whether the

10

error materially influenced the verdict -- and conclude that it did not.  As discussed above, the Commonwealth's case was strong.  At the same time, the defendant's case was weak:  his theory was that the victim had been sober enough to consent to sex with him, but too drunk to remember that she did so.[4]

Finally, as to the fourth factor, whether defense counsel made a tactical decision in refraining from seeking further redactions, we note as follows.  Because the defendant did not file a motion for new trial arguing that trial defense counsel was ineffective for failing to redact or move to strike the references to "sexual assault," the record before us does not include direct evidence of counsel's strategy.  Contrast Gardner, 102 Mass. App. Ct. at 313.  On cross-examination, counsel elicited that the mother chose to take the victim to the hospital where the mother and the victim both worked, even though there was another hospital closer to their home.  In closing, defense counsel argued, "You had a lot of people tossing around the term rape, sexual assault.  Those are the professional people . . . even her mom who used the term rape is a nurse. . . .  It's conclusory.  That's not a decision for those people to make.  That's a decision for you folks to make."

---

[4] The judge instructed the jury in accordance with Commonwealth v. Blache, 450 Mass. 583, 595 n.19 (2008), and the defendant does not find fault with the instruction.

In that context, defense counsel's refraining from objecting to the references to "sexual assault" may well have been a tactical decision.  Based on the record before us, we discern no substantial risk of a miscarriage of justice.  See Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 697 (2015).

Judgment affirmed.

By the Court (Rubin, Ditkoff & Grant, JJ.[5]),

Assistant Clerk

Entered:  March 15, 2024.

---

[5] The panelists are listed in order of seniority.