NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-212

COMMONWEALTH

vs.

HAKIM H., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The appellant juvenile was adjudicated delinquent on a complaint charging rape, in violation of G. L. c. 265, § 22 (b), and indecent assault and battery on a person fourteen years old or older, in violation of G. L. c. 265, § 13H. On appeal, the juvenile claims that the adjudication of delinquency should be reversed because of errors surrounding the admission of evidence concerning an examination of the victim conducted by a Sexual Assault Nurse Examiner (SANE). We affirm.

Background. The victim underwent a SANE examination a few hours after reporting that the juvenile had raped her. The nurse who examined the victim testified about her findings and the forms she completed. Because the Commonwealth had previously agreed to the juvenile's motion in limine not to permit the nurse to give the impression that SANE nurses are

"only brought in when there was a sexual assault," the prosecutor and the nurse were careful to describe the medical examination as a "forensic medical examination" rather than a "sexual assault" examination, and to refer to the victim as the "patient."

Forms that the nurse completed during the examination were admitted in evidence. The words "sexual assault," "assault," and "sexual crime" were redacted from the titles of all the forms; however, the parties failed to redact the words "assault" and "assailant" in several places.

Sections of SANE forms 2A and 2B ask the examiner to check boxes, based on the patient's report or the examiner's physical findings, under the category "weapon/force used." On both forms the nurse checked the box for "hold down/body weight." Form 2B included a space for additional description, where the nurse wrote "woke to person on top." Regarding this section of the form, the prosecutor asked the nurse, "What, if anything, did [the victim] describe?" The nurse answered, "[She] described being held down."

Discussion. 1. Failure to redact. The juvenile claims that it was reversible error to admit the SANE forms in evidence without redacting the words "assault" and "assailant." See Commonwealth v. Dargon, 457 Mass. 387, 396 (2010). The Commonwealth agrees. The parties disagree, however, as to

2

whether the juvenile objected and, accordingly, the standard of review.

The juvenile's counsel objected when the Commonwealth requested that the SANE forms be marked as an exhibit.  It is not clear what the objection was.  It appears that counsel objected to only one portion of the exhibit, and that the objection had to do with content that was unrelated to medical treatment.[1]  "Because the [juvenile's] objections at trial went to the substance of the victim's . . . statements [on the forms], and the error here stemmed not from admission of those statements, but rather from the failure to redact the language of [the form] itself, we review for substantial risk of miscarriage of justice."  Dargon, 457 Mass. at 397.

We discern no such risk, because we are confident that in the context of the entire trial, the failure to redact did not materially influence the verdict.  See id. at 397-398.  See Commonwealth v. Randolph, 438 Mass. 290, 298 (2002).  The case turned on whether the victim consented to the juvenile's indecent touching and penetrating her.  She testified that she woke from a heavy sleep and felt the juvenile's penis in her vagina.  He testified that the victim was awake and willing when

---

[1] Indeed, in his brief the juvenile states that he "objected to the forms coming in that do not go to treatment but to evidence collection."

he inserted his finger in her vagina and licked her vagina and between her buttocks, and that she did not object until he touched the tip of his penis to her "general butt area." In his statements to his friends, however, he said he thought he had "raped" the victim (although he claimed at trial that he "didn't have a value of what that word actually meant in that time" and that "[t]he word meant nothing at the time"). His oral and written statements to the police suggested that the victim was asleep and unresponsive. In closing argument, the prosecutor focused on the testimony of the victim, of the victim's and juvenile's friends, and on the juvenile's admissions. The prosecutor mentioned the SANE report only once, in reference to the tearing and bleeding of the victim's hymen. See Dargon, 457 Mass. at 398 (in closing argument prosecutor referenced only admissible portions of SANE forms). We are confident that the preprinted references to "assault" and "assailant" on the forms had little, if any, influence on the jury's assessment of the victim's lack of consent.

2. Descriptions of victim being held down. The checkmarks on the forms for "hold down/body weight" and the victim's description that she "woke to person on top" were properly admitted under the medical records exception to the hearsay rule. See G. L. c. 233, § 79; Mass. G. Evid. § 803(6)(B) (2023). "The statute has long been construed to permit the

4

admission of a record that relates directly and primarily to the treatment and medical history of the patient, 'even though incidentally the facts recorded may have some bearing on the question of liability.'" Commonwealth v. Torres, 479 Mass. 641, 653 (2018), quoting Commonwealth v. Dube, 413 Mass. 570, 573 (1992). The exception extends to "physical observations from which inculpatory inferences flow" (quotation and citation omitted). Commonwealth v. DiMonte, 427 Mass. 233, 242 (1998). See, e.g., Commonwealth v. McGann, 484 Mass. 312, 319-320 (2020) (statement "repeatedly beat him about the head/face and bit him several times in arms and also came after him with steak knife" in victim's medical records properly admitted). The fact that SANE records have the "dual purpose" of medical treatment and criminal investigation does not make them inadmissible. See Dargon, 457 Mass. at 393, 395-396.

The defendant argues, for the first time on appeal, that these notations of the forms are nonetheless inadmissible under a free-standing notion of "reliability" that he derives from Bouchie v. Murray, 376 Mass. 524, 528 (1978) ("the medical records exception statute makes admissible only those portions of records relating to treatment and medical history which possess the characteristics justifying the presumption of reliability"). While the medical records exception does not "render[] admissible all the contents of hospital records," id.,

as the court explained in Dargon, 457 Mass. at 396, a patient's own statements to a nurse consulted for treatment and recorded in treatment records are considered presumptively reliable. The juvenile has not rebutted that presumption. While the "hold down/body weight" box might be an imperfect classification for the victim's statements, the more precise notation "woke to person on top" is perfectly consistent with the victim's trial testimony. There was no error in admitting these notations on the SANE forms.

The nurse's testimony that the victim "described being held down," however, is problematic. To the extent the nurse was characterizing the exhibit in evidence, the support for this testimony is weak, and to the extent the nurse was relating a statement of the victim that was not recorded on the exhibit, a hearsay objection might have been warranted. But the juvenile's counsel did not object, whereas counsel did object moments later -- and her objection was sustained -- when the nurse was asked whether the victim described penetration of her vagina. Assuming without deciding that the testimony that the victim "described being held down" was admitted in error, we do not discern a substantial risk of a miscarriage of justice. The testimony was fleeting, the prosecutor did not refer to it in closing, and the lack of an objection was an indication that it

was not particularly prejudicial.  See Commonwealth v. Vallejo, 455 Mass. 72, 81-82 (2009).

3.  Dargon instruction.  "When a SANE kit is introduced as an exhibit or when testimony is offered concerning the SANE examination process," and an explanatory instruction is requested, a judge "should explain to the jury that SANE examinations occur when there is an allegation or complaint of sexual assault; and the fact that the examination occurred, by itself, does not constitute evidence or any indication that the complaint is valid."  Dargon, 457 Mass. at 398 n.13.  The juvenile specifically requested this instruction, but the Commonwealth opposed it and the judge denied it.  The Commonwealth argued that because the nurse's testimony had been presented in a sanitized form, using the term "medical forensic examination" instead of "SANE," the jurors would be confused by an instruction regarding a SANE examination.  The juvenile responded, sensibly, that the language of the instruction could be altered accordingly.  We see no prejudice to the Commonwealth in providing the prophylactic instruction mandated by Dargon, and it could easily have been tailored to fit the circumstances.

Because the instruction should have been given, we must determine whether its omission was prejudicial.  See Commonwealth v. Tillis, 486 Mass. 497, 503 (2020).  "An error is not prejudicial only if the Commonwealth can show with fair

7

assurance . . . that the judgment was not substantially swayed by it" (quotations and citations omitted).  Commonwealth v. Martin, 484 Mass. 634, 647 (2020).  "We conclude, with fair assurance, that the defendant suffered no prejudice from this error."  Id.

Although not a good reason to oppose the instruction, the Commonwealth carefully elicited the nurse's testimony in a way that avoided the impression "that every person who complains of sexual assault has in fact been assaulted," Dargon, 457 Mass. at 398 n.13, which is the harm that the Dargon instruction is designed to alleviate.  Not only was the SANE testimony presented in a sanitized form, the Commonwealth did not dwell on it.  As previously discussed, the case centered on the credibility of the witnesses who were present before, during, and after the crimes, and we are confident that any inference the jury might have drawn from the fact that the victim underwent a "forensic medical examination" -- or from any error

surrounding the testimonial and documentary evidence concerning

the examination -- did not substantially sway the verdicts.

Adjudications of delinquency
  affirmed.

By the Court (Milkey,
  Massing & Neyman, JJ.[2]),

Assistant Clerk

Entered:  March 19, 2024.

---

[2] The panelists are listed in order of seniority.