COMMONWEALTH *vs.* RICHARD A. MONTEIRO.

No. 07-P-1864.

Plymouth. March 12, 2009. - October 20, 2009.

Present: COHEN, BROWN, & WOLOHOJIAN, JJ.

*Rape. Evidence,* First complaint.

At the trial of indictments charging the defendant with forcible rape of a child, in which the complainant's father provided the "first complaint" testimony, the judge erred in admitting, in addition, testimony indicating that the complainant had made reports of sexual abuse to his mother, the Department of Social Services, and the district attorney's office, as such testimony was essentially the same as permitting those other witnesses to testify [492-493]; likewise, the judge erred in allowing a police detective to testify concerning the complainant's Sexual Abuse Intervention Network (SAIN) interview, where the phrasing of the detective's description of SAIN interviews conveyed that they are convened when persons are thought to be victims of sexual assault, and where the detective's testimony implied that he found the complainant credible [493-494]; moreover, neither the testimony regarding the victim's multiple reports nor the testimony regarding the SAIN interview served a legitimate purpose independent of first complaint, as such evidence was either duplicative of the testimony of the complainant's father or directed at matters that were irrelevant to the jury's inquiry, and the exclusion of such evidence would not have deprived the jury of a fair and accurate picture of the Commonwealth's case [494-497]; finally, because the case was one that turned on credibility, the repeated admission of duplicative complaint evidence presented a particularly high probability of prejudice requiring reversal of the defendant's convictions and remand for further proceedings [497-498].

INDICTMENTS found and returned in the Superior Court Department on February 18, 2005.

The cases were tried before *Barbara A. Dortch-Okara,* J.

*Stacey Gross Marmor* for the defendant.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

COHEN, J. After a jury trial in the Superior Court, the defend-

ant was convicted of three counts of forcible rape of a child, pursuant to G. L. c. 265, § 22A, as amended by St. 1988, c. 194, § 237. The central focus of his appeal is his contention that the Commonwealth introduced evidence of multiple extrajudicial complaints by the victim, in contravention of the "first complaint" rule. On the basis of this and related evidentiary errors, we reverse.

*Background.* As established at trial, the charges against the defendant resulted from the December, 2004, disclosure by the victim, whom we call Jack, that several years earlier, when he was ten years old, he was sexually assaulted by the defendant. The defendant was the former boyfriend of Jack's mother. At the time of the events in question, the defendant was a houseguest in the two-story house shared by Jack, his two younger brothers, Jack's mother, and her then-current boyfriend. The defendant resided with them for approximately two months, sleeping in an upstairs bedroom that was not being used. Jack slept downstairs with his brothers, his mother, and his mother's boyfriend. Jack had his own bedroom, separated from a common hallway by a curtain.

Jack testified that he awoke one night to find his pants pulled down and the defendant crouched by his bedside. The defendant was sucking on Jack's penis. With increasing loudness, Jack repeatedly told the defendant to stop. After attempting to quiet Jack, the defendant left the room. Jack did not tell anyone about the incident at that time.

On each of the next two nights, the defendant engaged in the same behavior. Both times, Jack woke up and forcibly pushed the defendant away from him; and both times, the defendant left the room. Again, Jack did not report the assaults. On the following night, in order to hide from the defendant, Jack slept in a closet. When found there in the morning by his mother and one of his brothers, Jack did not explain why he had not slept in his bed.

After staying with Jack's family for a few more weeks, the defendant eventually moved out. Jack's mother testified that, in the aftermath of the defendant's stay with the family, Jack acted differently. He began to receive lower grades in school and exhibited behavior problems, which prompted her to seek adjustments in medications that Jack was taking for attention deficit-hyperactivity disorder (ADHD).

Approximately four years later, Jack went to live temporarily with his father in Maine. While the two were watching an R-rated movie containing a scene with a man and woman kissing, Jack's father asked Jack if he had a girlfriend and had ever done anything like that. Jack responded by asking his father if he thought that Jack was gay. A conversation ensued during which Jack told his father about the assaults by the defendant, and Jack's father became enraged.

The next morning, Jack's father contacted Jack's mother, related what Jack had disclosed, and obtained the defendant's telephone number from her. Jack also spoke to his mother at that time. Jack's father immediately called the defendant, whom he knew slightly, and left a message on an answering machine telling the defendant to call him back.

A few hours later, Jack's father received a call from a man whom Jack's father recognized as the defendant. Jack's father immediately confronted the defendant with Jack's allegations. According to Jack's father, the defendant apologized, admitted to having done what Jack described, and stated that he had never penetrated Jack. The defendant offered to come see Jack's father to discuss the matter in person. That offer was rebuffed. Jack's father then called Jack's mother to report what the defendant had said. Jack's mother testified that, while they were talking, the defendant (as identified by her caller ID system) attempted to call her multiple times. Jack's mother did not speak to the defendant.

Within a few days, Jack returned to live with his mother in Massachusetts. Over the defendant's objection, Jack's mother was permitted to describe Jack's demeanor following his disclosure as "relieved" and "more open," and as if "just talking about it had lifted a weight." She also explained that she contacted various relatives to ask for advice about how to proceed and that, within approximately one week of Jack's disclosure, she contacted both the district attorney's office and the Department of Social Services (department),[1] with the result that a department social worker met with Jack at his home, and Jack underwent a Sexual Abuse Intervention Network (SAIN) interview at the district

---

[1] Now known as the Department of Children and Families.

attorney's office.[2] Over the defendant's objection, an investigating detective, who was not present for the SAIN interview but who later watched a tape of it, explained the nature and purpose of such interviews, and testified that, as a result of seeing the tape, he investigated further. The investigation culminated in the defendant's arrest shortly thereafter.

At trial, it emerged that Jack had suffered from ADHD and a mood disorder since before the time of the alleged assaults, and had been taking medication for ADHD since he was six years old, and for bipolar disorder after his diagnosis at the age of twelve. The defendant's theory at trial was that Jack, for reasons unknown, had fabricated his story.

*Discussion.* This case was tried in August, 2006, after the Supreme Judicial Court's adoption of a new approach to the admission of evidence of out-of-court complaints by sexual assault victims in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert. denied, 546 U.S. 1216 (2006), but before additional instructive cases, such as *Commonwealth* v. *Stuckich*, 450 Mass. 449 (2008), and *Commonwealth* v. *Arana*, 453 Mass. 214 (2009), were decided. Prior to *King*, evidence that a sexual assault victim made an out-of-court report of the crime was admissible to corroborate the victim's in-court testimony. See, e.g., *Commonwealth* v. *Bailey*, 370 Mass. 388, 391-397 (1976) (discussing the common-law origins of the "fresh complaint" rule and its application in the Commonwealth). In *King*, the court revisited the fresh complaint doctrine and reformed it in several important respects. First, the court determined that, in order to avoid the strong likelihood of unfair prejudice to the defendant from the admission of multiple complaints, the Commonwealth ordinarily would be permitted to present only the testimony of the first person to whom a victim reported a sexual assault. *Commonwealth* v. *King*, *supra* at 242-243.[3] Furthermore, the court concluded that such "first complaint" evidence would be admissible regard-

[2]The Sexual Abuse Intervention Network (SAIN) was established to avoid multiple interviews of children who may have suffered abuse. As was the case here, a SAIN interview team generally is made up of members of several different agencies, one or more of whom interview the child. See *Commonwealth* v. *Lam*, 444 Mass. 224, 227 n.4 (2005).

[3]But see *Commonwealth* v. *Murungu*, 450 Mass. 441, 445-446 (2008), discussing exceptional situations where a substitute first complaint witness may be used.

less of the interval between an alleged assault and the time of a victim's first report. *Id.* at 242. Finally, the court indicated that the complainant may also testify as to "the details of the first complaint (i.e., what the complainant told the first complaint witness) and also why the complaint was made at that particular time." *Id.* at 245. See Mass. G. Evid. § 413 (2008-2009).

In the present case, the defendant argues that the Commonwealth repeatedly exceeded the limits imposed by *King*. The Commonwealth's designated first complaint witness was Jack's father. However, in addition to his testimony, other evidence of reports by Jack was offered by the Commonwealth and received in evidence: Jack testified that following his disclosure of abuse to his father he spoke about it with his mother and the district attorney's office; Jack's mother testified that Jack was interviewed by a social worker from the department and by the district attorney's office; and the investigating detective testified about the SAIN interview.[4]

In the *Stuckich* decision, the Supreme Judicial Court explained that the prohibition on the admission of complaint evidence beyond that presented by the designated first complaint witness extends to testimony concerning the fact of additional reports, even if that testimony does not contain a detailed account of the victim's allegations. As the court explained, such testimony "is essentially the same as permitting those other witnesses to testify" and therefore violates the restriction contained in *King. Commonwealth v. Stuckich, supra* at 457. See *Commonwealth v. Arana, supra* at 222-223. Applying this principle here, the admission of testimony indicating that Jack had made additional reports of sexual abuse to his mother, the department, and the district attorney's office was error.

Likewise, the testimony concerning the SAIN interview was error. In *Stuckich*, the court specifically considered the admissibility of testimony regarding SAIN interviews. In concluding

---

[4]Over objection, the detective was permitted to state that he viewed the tape; that "[a] SAIN interview is an interview conducted through the district attorney's office by a trained professional interviewer regarding a person that's been the victim of a sexual assault"; and that its purpose "is for the child to go through an interview once due to the traumatic experience." The detective then answered affirmatively, in response to a question from the prosecutor, that "based on that interview, [he] conduct[ed] an investigation."

that such evidence ordinarily should be excluded, the court observed that "[t]he fact that the Commonwealth brought its resources to bear on [an] incident creates the imprimatur of official belief in the complainant. It is unnecessary and irrelevant to the issue of the defendant's guilt, and is extremely prejudicial." *Commonwealth* v. *Stuckich, supra* at 457. Here, the potential for prejudice was particularly strong. The very phrasing of the detective's description of SAIN interviews conveyed that they are convened when persons are thought to be victims of sexual assault. The testimony also implied that the detective, himself, found Jack credible, because he pursued the investigation as a result of seeing the tape.[5]

We reject the Commonwealth's argument that the evidence of additional complaints and the testimony regarding the SAIN interview were admissible, apart from the first complaint doctrine, because they fell within independent exceptions to the hearsay rule.[6] Although it was recognized in *Arana* that, in appropriate circumstances, evidence of multiple complaints might be admissible under a rubric other than first complaint, the existence of a potential alternative evidentiary basis for the admission of repetitive extrajudicial complaint evidence does not guarantee its admissibility. The court in *Arana* cautions that "[i]f testimony, other than that specifically and properly designated as first complaint testimony, serves no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations, it is inadmissible." *Commonwealth* v. *Arana, supra* at 229. Only if, "after careful balancing of the testimony's probative and prejudicial value, testimony is found by the judge to be relevant and admissible for reasons that are independent of the first complaint doctrine, in the context of a particular case, [is it]

---

[5]We do not accept the Commonwealth's view that the erroneously admitted SAIN interview testimony was beneficial to the defendant because it set the stage for him to claim later in the trial that the police investigation was inadequate.

[6]To the extent that the Commonwealth's argument rests on the assumption that the first complaint doctrine should be viewed as a hearsay exception, that analysis is incorrect. See *Commonwealth* v. *King, supra* at 241 n.21 (first complaint evidence is not offered to prove the truth of the matter asserted; it is an exception to the usual rule that a prior statement of a witness concerning a material fact consistent with the witness's trial testimony may only be admitted on redirect examination).

within the judge's discretion to admit the testimony. In this way the jury will be able to make a fairer and more accurate assessment of the Commonwealth's case." *Ibid.* Accordingly, a second or subsequent complaint is not admissible simply because a separate evidentiary rule applies (e.g., the statement is not hearsay, or it falls within an exception to the hearsay rule). The evidence also must serve a separate function, and must be of sufficient importance to a fair understanding of the Commonwealth's case that its probative value outweighs the incremental prejudice to the defendant inherent in the receipt of multiple complaint evidence.

*Arana* well illustrates how the balance is to be struck. In that case, two sisters, Betty and Marie, accused their friend's father of plying them with alcohol and sexually assaulting them during a sleepover at his house. At trial, there was considerable evidence of both explicit and embedded reports by Betty and Marie of the alleged crimes, beyond the testimony of the designated first complaint witnesses. Much of this testimony merely repeated the fact or content of the complainants' accusations, which already were the subject of their direct testimony and the first complaint evidence. Insofar as this type of repetitive testimony was concerned, the first complaint rule mandated its exclusion.[7]

In two instances, the *Arana* court determined that the trial judge had the discretion to admit additional complaint evidence. In both instances, however, the evidence served a purpose other than to corroborate the sisters' allegations and was necessary to give the jury a fair and accurate picture of the Commonwealth's case-in-chief. The first involved testimony by a police officer

[7]As the court stated in *King*: "The testimony of multiple complaint witnesses likely serves no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime. . . . Evidence that a complainant repeatedly complained of a sexual assault to several different persons in most instances will likely do no more to refute an inference of fabrication than permitting one first complaint witness to testify. A victim who is not fabricating an assault may tell only one other person of the assault, while a liar may spread the tale widely. Permitting a single first complaint witness to testify will accomplish the primary goal of the doctrine, which is to refute any false inference that silence is evidence of a lack of credibility on the part of rape complainants." (Citations omitted.) *Commonwealth* v. *King*, 445 Mass. at 243.

and the victims' mother concerning Betty's distraught demeanor when she visited the police station on the day following the alleged assaults. *Id.* at 225. The court held that this testimony was admissible "not as first complaint evidence but as evidence relevant to a highly contested issue, namely, whether Betty's accusations were fabricated to provide a basis for the civil lawsuit that would shortly be brought by her parents against the defendant." *Id.* at 226. The second concerned testimony by Betty that she returned to the police station a few days later and talked with an officer "about what happened that night." *Ibid.* The court held that this testimony "was relevant and admissible, not as first complaint, but as an integral piece of the Commonwealth's response to the defendant's theory that the complainants and their parents were motivated to pursue these charges to support [a civil] lawsuit, and the police were complicitous in this effort." *Id.* at 227. See *Commonwealth* v. *Kebreau,* 454 Mass. 287, 297-300 (2009) (endorsing the admission of multiple witness complaint testimony, not as first complaint, but as a proper response to cross-examination by the defendant and to contentions raised in his defense).

This court, too, has approved the admission of multiple reports of a victim's allegations of rape where the evidence served an independent purpose and, in view of the defense strategy, was necessary to present a fair and accurate picture of the Commonwealth's case. See *Commonwealth* v. *Dargon (No. 1),* 74 Mass. App. Ct. 330, *S.C.,* 457 Mass. 387 (2010). In *Dargon,* "[t]he thrust of the defense . . . was that the victim had had numerous opportunities to tell her neighbors, family members, police, and hospital personnel that she had been digitally raped, but that she had not done so." *Id.* at 335. Thus, enforcing the first complaint rule would have allowed the defendant to capitalize upon the Commonwealth's inability to admit evidence of multiple out-of-court complaints and would further have permitted the defendant to make an argument that was inconsistent with the facts. See *Commonwealth* v. *Arana, supra* at 228-229 (first complaint doctrine is not intended to be "used as a shield"). We therefore concluded that the contested evidence properly was admissible as prior consistent statements used to rebut allegations of recent contrivance, see, e.g., *Commonwealth* v. *Arriaga,* 438

Mass. 556, 580 (2003), and that, in the circumstances of that case, the evidence was more probative than prejudicial.

In the present case, however, factors militating in favor of the admissibility of additional complaint evidence are absent. Assuming, as the Commonwealth posits, that the evidence in question otherwise was admissible because it was not hearsay or that a traditional exception to the hearsay rule applies,[8] it nevertheless was barred by the first complaint doctrine. We fail to see how Jack's multiple reports or the testimony regarding the SAIN interview served a legitimate purpose independent of first complaint. The evidence was either duplicative of the testimony of Jack's father or directed at matters (such as the extent to which investigators apparently credited Jack's allegations) that were irrelevant to the jury's inquiry. But even if some aspect of this evidence could be said to have related to issues beyond pure corroboration of Jack's accusations, its exclusion would not have deprived the jury of a fair and accurate picture of the Commonwealth's case. Accordingly, any marginal probative value that the evidence may have had apart from corroboration was significantly outweighed by its likely prejudicial impact.

Having determined that it was error to admit both the testimony regarding Jack's multiple out-of-court reports of the crimes alleged and the detective's testimony concerning the SAIN interview, it remains to consider the remedy. Even though not all of the testimony challenged on appeal was the subject of objection at trial, we conclude that appellate relief is warranted based upon the aggregate errors in the case, regardless of the applicable standard of review. In a case such as this one, which turned on credibility, there is a particularly high probability of prejudice from the admission of duplicative complaint evidence. See *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 351-353

---

[8]It is unclear whether there is, in fact, an independent theory for admission of the contested evidence. Whereas the centerpiece of the defense in the *Dargon* case was a claim of recent fabrication, providing a solid basis for the admission of the victim's prior consistent statements, no clear justification exists for the admission of evidence of either Jack's additional complaints or the testimony concerning the SAIN interview. While the Commonwealth suggests various possible theories — e.g., res gestae, explanations for police conduct — none appears, at first blush, to be squarely applicable, and no such justifications for the evidence were offered at trial.

(2002); *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 725 (2003). Furthermore, the errors at trial were numerous, including additional errors that we have not discussed above. Apart from the SAIN interview testimony, there was other testimony regarding actions taken by Jack's family members, the department, and police in response to his claims that strongly implied that others believed him.[9] While such testimony may, in particular cases, be sufficiently material to disputed issues or inextricably woven into the essential narrative of the Commonwealth's case to be admissible, their admission here was largely gratuitous. The evidence improperly vouched for the victim's claims. See *Commonwealth* v. *Perreira*, 38 Mass. App. Ct. 901, 903 (1995).[10]

*Conclusion.* We conclude that the repeated admission of complaint evidence in violation of the first complaint doctrine requires that we grant the defendant a new trial. The judgments of conviction are reversed and the cases remanded to the Superior Court for further proceedings.

*So ordered.*

---

[9] We refer here to evidence concerning telephone calls by and between the victim's family members, telephone calls to various Commonwealth and law enforcement agencies, and various police investigative actions.

[10] Little need be said about the defendant's remaining arguments. We are not persuaded that the testimony of Jack's mother concerning his post-disclosure demeanor carried with it a separate, impermissible embedded complaint and discern no prejudicial error from its admission. See *Commonwealth* v. *Arana*, 453 Mass. at 225, citing to *Commonwealth* v. *Hudson*, 417 Mass. 536, 537 (1994). The defendant's issues concerning ineffective assistance of counsel and improper prosecutorial argument need not be decided. As to the latter claim, we assume that in any retrial, the prosecutor will avoid using language that could be interpreted by the jury as vouching for the credibility of witnesses.