## Commonwealth vs. Angel Aviles.

No. 08-P-1678.

Hampden. January 6, 2010. - August 16, 2010.

Present: Kantrowitz, Mills, & Vuono, JJ.

Further appellate review granted, 458 Mass. 1106 (2010).

*Evidence,* First complaint, Credibility of witness, Relevancy and materiality, Verbal completeness, Prior consistent statement. *Rape. Indecent Assault and Battery.*

At a criminal trial, the defendant's request to preserve his rights, which he made at the time the judge delivered her ruling during a pretrial hearing on his motion in limine to exclude certain evidence, and the defendant's later motion for reconsideration of that ruling, were not sufficient, in the absence of an objection to the evidence at trial, to preserve his objection to the entire ruling. [392-393] Mills, J., dissenting.

At the trial of indictments charging rape of a child and indecent assault and battery on a child, there was no error in the admission in evidence of the victim's testimony regarding whom she told about the rape, where that testimony was relevant to a highly contested issue, namely, whether the victim's accusations were fabricated, and in any event, there was no substantial risk of a miscarriage of justice where the defendant capitalized on the testimony at issue. [393-395] Mills, J., dissenting.

At the trial of indictments charging rape of a child and indecent assault and battery on a child, no substantial risk of a miscarriage of justice arose from the victim's mother's testimony that she learned additional information from a conversation with the victim that led her to contact the police, where, even if there was error (in that the testimony did not serve any additional purpose), the jury would nonetheless have inferred from the fact that the defendant was charged with rape that a report had been made to the police. [395-396]

At a criminal trial, there was no error in the admission in evidence of a portion of the victim's grand jury testimony as a prior consistent statement, where the testimony was admissible under the doctrine of verbal completeness, and in any event, even if there was error, any harm that resulted was minimal. [396-398]

Indictments found and returned in the Superior Court Department on December 28, 2005.

The cases were tried before *Tina S. Page*, J.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

VUONO, J. Following a jury trial in the Superior Court, the defendant was convicted of rape of a child, G. L. c. 265, § 23, and indecent assault and battery on a child, G. L. c. 265, § 13B. On appeal, he contends that the erroneous admission of multiple first complaint testimony requires reversal of his convictions. He also argues that the judge erred by allowing the Commonwealth to bolster the victim's credibility with a prior consistent statement. We affirm.

*Background.* 1. *Facts.* We summarize the facts the jury reasonably could have found, reserving certain details of the trial for later discussion. The victim, whom we call Marie,[1] was eight years old when she, her younger sister, and their mother moved in with the defendant, who had offered them a place to stay in exchange for providing assistance to his mother, who was recovering from heart surgery.

The girls slept on an air mattress on the floor of the defendant's bedroom, and their mother slept either on the air mattress or in the bed with the defendant. On four to five occasions, when Marie and the defendant were alone in the bedroom, the defendant moved onto the air mattress next to her, touched her vaginal and buttocks areas over her pants, rubbed against her, and put his legs over her legs. The sexual assaults continued over a period of months. One night, while her mother and sister were asleep beside her on the air mattress, Marie awoke to the defendant attempting to pull her pants down. Marie left the bed and went to the bathroom across the hall, locking the door behind her. The defendant managed to unlock the door and entered the bathroom. Once inside, he pulled down Marie's jeans and underpants, grabbed her by the waist, and turned her around so that her back was to him. Then, as Marie testified, the defendant put his penis into her "butt." Marie was crying, and the defendant told her not to reveal the rape to anyone and threatened to hurt her mother if she did so.

---

[1] A pseudonym. See G. L. c. 265, § 24C.

Marie believed the defendant's threat and for three years did not disclose that the defendant had raped her. Several nights after the rape, however, she protested when her mother told her that it was time to go to bed. She began to cry and resisted going into the bedroom because the defendant had already retired for the night. When her mother insisted, Marie revealed that the defendant "touched me."

Marie's mother and the defendant's mother, who had overheard the conversation, confronted the defendant, who denied touching Marie. One or two days later, the family moved out of the defendant's apartment and returned to Marie's maternal grandmother's home, where the family had lived previously. None of the sexual abuse was reported to the police until 2005 when, after seeing the defendant's photograph on television, Marie told her grandmother that the defendant had raped her. The grandmother informed her daughter, Marie's mother, who contacted the police.

The defendant did not testify at trial. His trial strategy was to undermine Marie's testimony through cross-examination, suggesting that she had fabricated the allegations because she wanted to move out of the defendant's home and return to live with her grandmother. He also cross-examined Marie with prior inconsistent statements from her testimony before the grand jury.

2. *First complaint evidence.* At the beginning of the trial, the judge held multiple hearings on the defendant's motion in limine, which sought to exclude evidence that Marie told her grandmother (or anyone else) about the rape. The defendant argued that because the testimony did not relate to the indecent assault and battery, it was not admissible under the first complaint doctrine. An additional basis for excluding testimony about Marie's conversation with her grandmother, the defendant claimed, was to avoid any risk that the jury would learn that the reason his photograph had appeared on television was because he was a registered sex offender.[2]

The judge denied the motion on two grounds. First, she

[2]The defendant also filed a motion in limine to exclude evidence that he was previously convicted of indecent assault and battery on a child, had served a term of incarceration, and was a registered sex offender. That motion, to which the Commonwealth did not object, was allowed and is not an issue on appeal.

reasoned that the challenged testimony related to a wholly different offense from the indecent assault and battery and, therefore, did not constitute first (or fresh) complaint evidence. Second, she concluded that the Commonwealth was entitled to explain the three-year delay in reporting the rape. Ultimately, the judge ruled that Marie could be asked whether she had a conversation with her mother or grandmother "as a result of seeing the defendant on television," but the content of those conversations was excluded. The judge explained her ruling by stating, "I think the Commonwealth does have a right to explain to the jury that this young girl did not just regurgitate this information in a vacuum, so I think it puts things into perspective, and so that is my ruling."

At trial, Marie testified in accordance with the judge's ruling. She described the indecent touchings that occurred on the air mattress, recounted the details of the rape, and responded affirmatively to questions posed by the prosecutor that she disclosed the rape in 2005. She provided no details of her conversations about the rape, confining herself only to the fact that such conversations had occurred after she saw the defendant's photograph on television.

On cross-examination, defense counsel led Marie through a timeline of her disclosures to her mother, her grandmother, and the police. The prosecutor had not asked Marie a single question about the content of her statement to the police. Defense counsel, on the other hand, had Marie read her statement to herself and then questioned her extensively about it, pointing out discrepancies between the statement and her testimony at trial.

Marie's mother also testified within the parameters set by the judge. As the designated first complaint witness, she recounted what Marie told her about the indecent touchings. With respect to the rape, however, she testified only that in 2005, she had a conversation with Marie in which she learned "additional information," and that "as a result" of that conversation, they went to the police.

*Discussion.* 1. *Standard of review.* The defendant contends that the testimony of Marie and her mother about Marie's report that she had been raped violated the first complaint doctrine set forth in *Commonwealth* v. *King*, 445 Mass. 217 (2005), cert.

denied, 546 U.S. 1216 (2006) See also Mass. G. Evid. § 413 (2010). The defendant did not object to the additional complaint evidence at trial. Nonetheless, he asserts that his objection was preserved because he asked the judge to preserve his rights when she delivered her ruling.[3] The problem with this argument is that the judge did not respond to the request or otherwise indicate that the defendant's rights were preserved at that time. At a later point, defense counsel sought reconsideration of that portion of the ruling relating to Marie's testimony that she had seen the defendant on television.[4] After the judge indicated that she would not change her ruling, defense counsel objected and asked if his rights were preserved. The judge responded, "Very much so. Anything else?" to which defense counsel answered, "No." Contrary to the defendant's contention, this exchange was not sufficient to preserve an objection to the entire ruling. See *Commonwealth* v. *Whelton*, 428 Mass. 24, 25-26 (1998); *Commonwealth* v. *Dargon*, 457 Mass. 387, 393-394 (2010); Mass. G. Evid. § 103(a)(1) (2010). Contrast *Commonwealth* v. *Kee*, 449 Mass. 550, 553 n.5 (2007). Accordingly, we must decide if the challenged testimony was properly admitted and, if not, whether it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002).

2. *Marie's testimony.* Relying primarily on *Commonwealth* v. *Stuckich*, a case decided after the defendant's trial, the defendant argues that the admission of testimony regarding whom Marie told about the rape "is essentially the same as permitting those other witnesses to testify." 450 Mass. 449, 457 (2008). The defendant's reliance on *Stuckich* as requiring reversal is misplaced. Here, the testimony was properly admitted "as

---

[3]Although the Commonwealth conceded that an objection was preserved, we are not bound by the concession. *Commonwealth* v. *Crowley*, 43 Mass. App. Ct. 919, 919 (1997).

[4]Defense counsel stated: "I just want to briefly readdress the issue of seeing my client on television."

He then continued, "[t]he problem I have with this whole issue, it becomes almost impossible for me to cross-examine her on point because of what we are likely to get into in terms of my client. The reason my client was on television and she saw him, I'm pretty much helpless in terms of opposing in front of the jury."

evidence relevant to a highly contested issue, namely whether [Marie's] accusations were fabricated" to prompt the family's move back to the grandmother's home. *Commonwealth* v. *Arana*, 453 Mass. 214, 226 (2009).[5]

As we have noted, the defendant's trial strategy was to undermine Marie's credibility by suggesting that she contrived the allegations of abuse so that she and her family would move out of the defendant's home and back to her grandmother's house. Consistent with this strategy, trial counsel vigorously cross-examined Marie and her mother on this point. Marie's testimony that she told her grandmother that the defendant raped her — three years after the fact and while she was living with the grandmother — directly rebutted the defendant's theory of the case. It was, therefore, relevant and admissible to establish her credibility. See *Commonwealth* v. *Kebreau*, 454 Mass. 287, 294-295 (2009) (multiple complaint witness testimony admissible in response to "contentions raised" by defense). See also Mass. G. Evid. §§ 401-403 (2010).

The question whether testimony concerning multiple complaints is permissible "is fact-specific and requires, in the first analysis, a careful evaluation of the circumstances by the trial judge." *Id.* at 296. Here, as in *Kebreau*, the defendant was charged with two separate offenses. The judge conducted a thorough hearing in connection with the challenged evidence and carefully balanced its probative value against the potential for undue prejudice. The judge did not abuse her discretion. See *Commonwealth* v. *Dargon*, *supra* at 398-401. This is not a case where the Commonwealth sought to introduce "a parade of multiple complaint witnesses." *Stuckich*, *supra* at 457 n.11. To the contrary, the additional complaint evidence enabled the jury "to make a fairer and more accurate assessment of the Commonwealth's case." *Commonwealth* v. *Arana*, *supra* at 229.

Furthermore, "the primary goal of the [first complaint] doctrine

---

[5]See also *Commonwealth* v. *McCoy*, 456 Mass. 838, 845 (2010) ("[W]hile the first complaint testimony prohibits the 'piling on' of multiple complaint witnesses, *Commonwealth* v. *Murungu*, 450 Mass. 441, 442-443 [2008], it does not exclude testimony that 'is otherwise independently admissible' and serves a purpose 'other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations.' " *Commonwealth* v. *Arana*, 453 Mass. 214, 220-221, 229 [2009]); *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 496 (2009).

. . . is to refute any false inference that silence is evidence of a lack of credibility on the part of rape complainants." *Commonwealth* v. *King*, 445 Mass. at 243. Our conclusion (and that of the trial judge) is consistent with this goal. The exclusion of all evidence that Marie eventually disclosed the rape would have created a "false inference" that the rape allegation was fabricated. As acknowledged by the dissent, "[t]rue, the jury might question why Marie did not report the rape at the time that she reported the other touchings (which might, in turn, support an inference the rape was fabricated)." *Post* at 400 n.3. To deprive the Commonwealth of the ability to correct a potentially false impression would defeat the purpose underlying the first complaint doctrine. See *Commonwealth* v. *Murungu*, 450 Mass. 441, 446 (2008) (first complaint doctrine counteracts frequent perception that years of silence following sexual assault suggests that victim may have fabricated claim).

In any event, even if Marie's testimony regarding her disclosure of the rape was not properly admitted, we cannot conclude there was a substantial risk of a miscarriage of justice where the defendant "capitalized" on the testimony at issue. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 851 (2010) ("Where the inconsistencies contained in the cumulative first complaint testimony were more important to the defense than the Commonwealth, there is no harm to the defendant").

3. *The mother's testimony*. As to the mother's testimony, the defendant contends that her statement about learning "additional information" was inadmissible because it did not relate to Marie's first complaint, which was about the indecent touchings and not the rape. He also claims that the prosecutor violated the judge's guideline that no one would testify about "anything [Marie] told them about the rape," when she elicited the statement from the mother that it was Marie's disclosure that prompted her to go to the police in 2005.

The challenged testimony spans only a few lines of transcript and primarily concerns the circumstances that led Marie's mother to contact the police. Although the mother did not provide any details about her conversation with her daughter or the police,[6]

---

[6]Prosecutor: "At some point during 2005 did you learn a little bit more information?"

she did testify that she had a conversation with Marie about the "incident." Even assuming error, see *Commonwealth v. McCoy, supra* at 846 (admission of mother's testimony that she and victim had conversation about assault, even without details of conversation, was error when testimony did not serve "any additional purpose"), the testimony was inconsequential. The jury would have inferred that a report had been made to the police by the fact that the defendant was charged with rape. Thus, we conclude that the testimony did not create a substantial risk of a miscarriage of justice.

4. *Prior consistent statements.* On direct examination, Marie testified that the defendant touched her buttocks and her vaginal area over her clothing. Defense counsel sought to impeach her testimony by introducing evidence that Marie previously had told the grand jury that the defendant had not touched her buttocks but had only touched her vagina. The Commonwealth then requested permission to introduce another portion of Marie's grand jury testimony that was consistent with her trial testimony.

MOTHER:     "Yes."

PROSECUTOR: "About the incident, incidents, okay?"

MOTHER:     "Yes."

PROSECUTOR: "And as a result of that, did you go to the police?"

MOTHER:     "Yes."

PROSECUTOR: "What made you decide to do that then?"

Following a sidebar conference, the prosecutor continued her questioning.

PROSECUTOR: "Without getting into the contents of the conversation with your daughter, at some point you had a conversation with your daughter in 2005?"

MOTHER:     "Yes."

PROSECUTOR: "And you learned some additional information?"

MOTHER:     "Yes."

PROSECUTOR: "About Mr. Aviles and your daughter, correct?"

MOTHER:     "Yes."

PROSECUTOR: "And as a result of that, you went to the Springfield Police Department?"

MOTHER:     "Yes."

PROSECUTOR: "And gave statements?"

MOTHER:     "Yes."

The mother then identified the defendant, and the Commonwealth ended the direct examination.

The judge ruled, over objection, that Marie's prior consistent statement was admissible under the doctrine of verbal completeness. See *Commonwealth* v. *Watson*, 377 Mass. 814, 826-831 (1979).

The defendant contends that it was an abuse of discretion for the judge to admit Marie's prior consistent statement.[7] Because the issue was properly preserved, we review to determine whether there was error and, if so, "whether the error had, or might have had, an effect on the jury and whether the error contributed to or might have contributed to the verdicts." *Commonwealth* v. *Perrot*, 407 Mass. 539, 549 (1990).

"A witness's prior statement that is consistent with that witness's trial testimony is usually inadmissible." *Commonwealth* v. *Tennison*, 440 Mass. 553, 563 (2003). See Mass. G. Evid. § 613(b)(1) (2010). However, "[w]hen a party introduces a portion of a statement in evidence, the doctrine of verbal completeness allows admission of other relevant parts of the same statement to 'clarify the context' of the admitted portion and prevent one side from 'presenting a fragmented and misleading version of events to the finder of fact.' " *Tennison, supra,* quoting from *Commonwealth* v. *Carmona,* 428 Mass. 268, 272 (1998). Here, the defendant introduced only that portion of Marie's grand jury testimony that was helpful to him. "In doing so, [he] opened the door for the admission of the remainder of that statement." *Id.* at 564. Additionally, because the statement introduced by the defendant left the impression that Marie's memory was faulty, the Commonwealth was entitled to rehabilitate Marie by introducing statements that explained or contradicted the inconsistency, "even though prior consistent statements by [Marie were] implicated." *Commonwealth* v. *Vuthy Seng,* 456 Mass. 490, 498-499 (2010). Consequently, the judge acted properly to ensure that the jury heard "all that was said by [Marie] at the same time and upon the same subject." *Commonwealth* v. *Watson, supra* at 827, quoting from *Commonwealth* v. *Keyes,* 11 Gray 323, 324 (1858). See Mass. G. Evid. § 106(a) (2010).

---

[7]The defendant also argues, for the first time on appeal, that the judge should have given an instruction on the proper use of prior consistent statements. While it would have been better had the instruction been given, the defendant did not request it, and we are confident that the absence of the instruction did not create a substantial risk of a miscarriage of justice.

Even if we were to conclude that it was error for the judge to have admitted Marie's consistent statement, any harm that followed as a result was minimal. "This was not a case where the additional testimony was merely loaded with 'self-serving statements,' or information on unrelated subject matter." *Commonwealth* v. *Tennison, supra* at 564. To the contrary, the prosecutor did no more than ask the stenographer to read two lines of transcript that directly followed the testimony introduced by the defendant.[8] We thus conclude that the judge did not abuse her discretion in allowing the jury to hear the entirety of Marie's grand jury testimony about the indecent touchings.

*Judgments affirmed.*

MILLS, J. (dissenting). Because I conclude that the admission of the multiple complaint testimony was improper under the first complaint doctrine, and because the defendant preserved this issue for our review, I would reverse the judgments of conviction and accordingly, I respectfully dissent.

*The challenged testimony.* Marie testified that in 2002, while she was still living at the defendant's apartment, she revealed to her mother the indecent touchings that had occurred on the air mattress. While this testimony was admissible under the first

---

[8]WITNESS: " 'Did he touch your breast area?' "

. . .

DEFENSE COUNSEL: "What was the answer she gave?"
WITNESS: " 'No.' "
DEFENSE COUNSEL: "And could you read the next question please by [the prosecutor]?"
WITNESS: " 'Did he touch your buttocks area with his hands?' "
DEFENSE COUNSEL: "And the answer?"
WITNESS: " 'No.' "

On cross-examination, the Commonwealth elicited the following:

PROSECUTOR: "Was she asked is she was, if the Defendant had touched her vaginal area with her pants on —"
WITNESS: "Correct."
PROSECUTOR: "— and her answer was, 'Yes,' correct?"
WITNESS: "Correct."
PROSECUTOR: "Okay, no further questions."

complaint doctrine, the defendant argues that Marie's testimony regarding the additional complaint she made to her grandmother three years later was not.[1]

Marie's mother was permitted to testify that in 2005, she and Marie had a conversation in which the mother learned "additional information," and that "as a result" of that conversation, they went to the police to give statements. While the mother, as the designated first complaint witness, could and did testify regarding Marie's disclosure in 2002, the defendant argues that her testimony regarding the 2005 disclosure was improper.

*Standard of review.* The majority observes that both parties argue admission of the multiple complaint testimony as one of preserved error. However, upon its review, the majority concludes that the defendant did not preserve this issue. Based upon three pretrial conversations between the parties and the judge, I disagree.

In the first conversation, defense counsel argued that the complaint of rape was "beyond the scope of" the first complaint doctrine. The prosecutor responded that while she did not intend to elicit "details" from Marie, she argued that Marie could testify that she had made such a complaint. Defense counsel objected to testimony regarding "what happened two years later that caused people to go to the police." He then made it explicit that he was "object[ing] to the conversation with the grandmother, and the ensuing police report" because it was not "first complaint." The judge reserved decision.

In the second conversation, the judge summarized the controverted testimony to be that "as a result of seeing the [d]efendant on television, [Marie] told her mother and grandmother that she had been raped by him." Defense counsel argued that Marie could not testify to "what she said to [other people], for example, that she was raped." The judge ruled that although Marie could not disclose "[t]he substance of what she said to her mother or grandmother[,]" she could testify "that as a result of seeing the Defendant on television, she made a disclosure to her mother or grandmother." Defense counsel immediately objected to this ruling and "ask[ed] that [his] objection be preserved." The judge did not respond.

---

[1]Although Marie did not testify as to the details of that conversation, she did testify that such a conversation occurred in which she revealed a rape.

In the third conversation, which occurred very shortly after the second, defense counsel sought reconsideration of the judge's ruling, focusing at that point on the evidence of Marie seeing the defendant on television. The record reflects that at this time, defense counsel, the prosecutor, and the judge had in mind the guidelines established in the second conversation, which had occurred only ten transcript pages earlier. At the conclusion of this third conversation, the judge stated that defense counsel's "objection is noted" and agreed that his "rights [were] preserved."[2] Thus, I would review the challenged testimony under the familiar principles of the prejudicial error standard. See *Commonwealth v. Flebotte*, 417 Mass. 348, 353 (1994).

*Discussion.* The majority appears to acknowledge that the challenged testimony was not admissible as first complaint evidence.[3] I disagree, however, with the majority's analysis and conclusion regarding whether the testimony was otherwise admissible under *Commonwealth v. Arana*, 453 Mass. 214, 222-223 (2009), and other cases cited in the majority opinion.

---

[2] Although the defendant did not object at trial, the judge's statement that this issue was preserved "reliev[ed] the defendant of the necessity to object to the evidence at trial." *Commonwealth v. Kee*, 449 Mass. 550, 553 n.5 (2007). See *Commonwealth v. Dunton*, 397 Mass. 101, 102 n.2 (1986) (an objection need not be renewed where the judge expressly assures defense counsel that his rights are "fully protected"); *Commonwealth v. LaSota*, 29 Mass. App. Ct. 15, 24 n.12 (1990) (issue preserved where judge twice noted defense counsel's objection and said that "his rights were preserved").

[3] The Commonwealth argues that the multiple complaint testimony was permissible under *Commonwealth v. Kebreau*, 454 Mass. 287 (2009). In that case, one witness was permitted to testify to a disclosure, which occurred between 1988 and 1990, of genital touching. Another witness, who the judge ruled was an additional first complaint witness, was permitted to testify to a subsequent disclosure, which occurred in 1994, of rapes.

The rapes in *Kebreau*, which began in 1990, did not take place until *after* the first complaint of indecent touchings. Accordingly, it was impossible for the complainant in that case to have reported the rapes at the time of her first complaint. In this case, by contrast, all the abuse occurred *before* Marie's first complaint. As a matter of timing, Marie could have reported the rape in her first complaint to her mother. Compared to the risk of prejudice to the defendant, the prejudice to Marie by excluding evidence of the rape complaint is relatively minor. True, the jury might question why Marie did not report the rape at the time that she reported the other touchings (which might, in turn, support an inference that the rape was fabricated). However, this same inference might occur even if the testimony were admitted, because she waited three years to come forward with the new complaint rather than report it at the time of the first complaint.

Although evidence not admissible as first complaint may be "independently admissible in the judge's discretion on the basis of some other evidentiary principle," *id.* at 224, the multiple complaint evidence was not otherwise admissible in this case. The majority concludes that the challenged testimony was properly admitted because, in part, it "enabled the jury 'to make a fairer and more accurate assessment of the Commonwealth's case.' " *Ante* at 394, quoting from *Commonwealth* v. *Arana, supra* at 229. I read *Commonwealth* v. *Arana* differently. If multiple complaint testimony "serves no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations, it is inadmissible." *Id.* at 229. See *Commonwealth* v. *McCoy*, 456 Mass. 838, 846 (2010) ("The testimony of multiple witnesses may not be used solely to enhance a victim's credibility, without serving any additional evidentiary purpose"). Thus, I disagree with the majority's conclusion that the challenged testimony was admissible simply because it established Marie's credibility. *Ante* at 394-395.

Our cases explicitly instruct that in order to be admissible, such testimony must "serve[] a purpose other than to corroborate [Marie's] allegations." *Commonwealth* v. *Monteiro*, 75 Mass. App. Ct. 489, 495 (2009). If multiple complaint testimony was admissible simply because it bolstered a victim's credibility or enabled the jury to better understand the Commonwealth's case, the first complaint doctrine would have no meaning. The testimony regarding the 2005 disclosures did not relate to Marie's state of mind and did not offer any reason for the delay in her disclosures. Further, the "jury did not need to know how the complaint of abuse evolved into the case before them." *Commonwealth* v. *Stuckich*, 450 Mass. 449, 457 (2008). The defendant did not exploit the delay in order to impeach Marie's credibility and did not otherwise open the door to the multiple complaint testimony. Compare *Commonwealth* v. *Kebreau*, 454 Mass. 287, 299 (2009).

In applying the prejudicial error standard of review, I note that in this case, the "central determination before the jury was the credibility of the complainant[]." *Commonwealth* v. *Arana, supra* at 228. When the case turns on credibility, "there is a particularly high probability of prejudice from the admission of

duplicative complaint evidence." *Commonwealth* v. *Monteiro*, *supra* at 497. Considering the multiple complaint testimony which was erroneously received by the jury, I conclude that relief is warranted and thus, I respectfully dissent.