NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-25

COMMONWEALTH

vs.

LAWRENCE LAMPHIER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of sexually assaulting two of his granddaughters when they were between the ages of four and nine.[1]  On appeal, the defendant claims that several trial errors require reversal, alone or cumulatively. We affirm.

Discussion.  1.  Multiple complaints.  The defendant faults the judge for permitting his daughter, the first complaint witness and the mother of the victims (daughter), and a police officer to testify about additional reports of the abuse after the first complaint.  Specifically, the daughter testified that

_____

[1] The defendant was convicted of six counts of aggravated rape, two counts of rape of a child by force, and four counts of indecent assault and battery on a child under fourteen.  He was acquitted of an additional indecent assault and battery charge and of posing a child in the nude.

she took the victims to a "forensic interview" and instructed them that "they needed to be very honest, and they needed to tell these people what happened to them"; to a meeting at the district attorney's office; and to a "forensic exam[ination]." In addition, Officer Jared Ulak testified that there was a one-week delay between the initial report of the crimes and the execution of a warrant to search the defendant's home because "there was a SAIN interview[2] that needed to be performed." The defendant argues that the daughter's and Ulak's testimony was inadmissible because it "serve[d] no purpose other than to repeat the fact of a complaint and thereby corroborate the complainant's accusations," and that the judge failed to conduct the "careful balancing" required to determine whether the testimony was "relevant and admissible for reasons that are independent of the first complaint doctrine" and not unfairly prejudicial. Commonwealth v. Arana, 453 Mass. 214, 229 (2009). Because the defendant did not raise this claim at trial, our review is limited to determine whether there was any error and, if so, whether it created a substantial risk of a miscarriage of

---

[2] Ulak's testimony was the first reference at trial to a "SAIN interview," a term that was then repeated but never explained to the jury. The interview was first referenced in defense counsel's questioning of the older victim on cross-examination, where it was described as a recorded interview, about four years prior to trial, with a woman named Jessica. See Commonwealth v. Monteiro, 75 Mass. App. Ct. 489, 492 n.2 (2009) (explaining purpose of Sexual Abuse Intervention Network).

2

justice.  See <u>Commonwealth</u> v. <u>McCoy</u>, 456 Mass. 838, 845-846

(2010).[3]

The prosecutor had a legitimate reason to question the

daughter briefly about the interviews the victims attended.  The

defendant's theory of the case was that the daughter manipulated

the victims into accusing him of abuse because she was angry

with his decision to stop providing financial support.  To

suggest that the victims had practiced and fabricated their

trial testimony, the defendant cross-examined them at length

about prior statements they had made (and, in the case of the

older victim, pictures she had drawn) during the initial

forensic interview and in meetings with "the two lawyers."[4]

---

[3] The defendant did not object to the daughter's testimony that
she took the victims to a forensic interview.  When the
prosecutor began to ask the daughter about something that
occurred on June 16, 2014, defense counsel interrupted with an
objection.  The judge asked to "just hear the question," the
prosecutor finished asking whether the victims "had a forensic
interview at the Children's Advocacy Center in Fall River," and
the daughter answered, "Yes."  Defense counsel did not renew the
objection.  Nor did the defendant object to the daughter's
testimony that she took the victims to interviews at the
district attorney's office and to a forensic examination.  The
defendant did object when Ulak was asked the reason for the
delay in executing the search warrant but did not state a basis
for the objection.  See <u>Commonwealth</u> v. <u>Bonds</u>, 445 Mass. 821,
828 (2006) (issue not preserved where objection at trial is on
different grounds from those asserted on appeal).  In any event,
whether the defendant preserved his objection to Ulak's
testimony is immaterial, as we conclude that the testimony did
not violate the first complaint rule.
[4] Defense counsel had also previously referred to the forensic
examination, which was favorable to the defense, in his opening
statement, telling the jurors they would "hear that physical

Thus, before the daughter testified, the jury already knew that the victims had reported and described the defendant's conduct at these interviews -- which also explains why defense counsel did not object when the prosecutor asked the daughter about them and why the judge did not engage in any "balancing."

The brief references to the subsequent interviews did not violate the first complaint doctrine. "[T]he admission of multiple reports of a victim's allegations of [sexual assault] is permissible where the evidence serves an independent purpose and is necessary to present a fair and accurate picture of the Commonwealth's case." Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009), citing Commonwealth v. Monteiro, 75 Mass. App. Ct. 489, 495 (2009). Here, the testimony was necessary and appropriate to establish the timeline and circumstances of the victims' various statements that had been previously introduced as impeachment evidence during their cross-examinations. See Commonwealth v. Torres, 86 Mass. App. Ct. 272, 277-278 (2014). "The evidence was received for the independent purpose of rebutting the inferences raised by the defendant's inquiries -- inquiries designed to show recent fabrication on the part of the victim -- and was necessary for a fair understanding of the

_____

examinations were done of the children and nothing physically was found to support [their] allegations." The victims' medical records would later be admitted in evidence without objection.

4

Commonwealth's case."  Saunders, supra.

2.  Testimony linking the forensic interviews with the search warrant.  The defendant argues that Ulak's testimony about waiting to obtain the search warrant until the victims' forensic interviews had been conducted was improper for the additional reason that it was introduced to suggest that the police believed the victims.  See Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008); Monteiro, 75 Mass. App. Ct. at 494.  We disagree.  Ulak was among the officers who executed the search warrant at the defendant's home.  Establishing the timing of the search in relation to when the allegations surfaced was important for the Commonwealth's case.[5]  Ulak's testimony was not offered in a manner to stamp "the imprimatur of official belief" on the victims' testimony.  Stuckich, supra.  He did not discuss the details of the investigations as in Stuckich, supra at 456, nor did he describe the nature and purpose of the SAIN interview process as in Monteiro, supra at 492, 494.

Moreover, by the time Ulak testified, the jury had already heard the victims' testimony, including the older victim's testimony that the defendant kept condoms, lubricant, and a cup

---

[5] During the search, the police did not find the incriminating evidence that the older victim said the defendant hid above the basement ceiling tiles -- a fact that was favorable to the defendant.  The timeline for obtaining the warrant, however, supported an inference that the defendant had the opportunity to remove any incriminating evidence before the search occurred.

into which he ejaculated hidden in the ceiling tiles in his basement. They had also heard the first complaint evidence and many of the statements the victims had made during their forensic interviews. The jury would not have been surprised to learn that the police sought a search warrant after the victims' interviews were completed.

The defendant's argument that "[t]he Commonwealth elicited further testimony on this issue" through Sergeant Joey Faria is meritless. Faria, the lead investigator on the case, was called as a defense witness, and he testified on direct examination about the content of the victims' statements during their SAIN interviews and at subsequent meetings at the district attorney's office. He also testified, on direct examination by defense counsel, about the execution of the search warrant. The Commonwealth was free to question Faria about the same subjects during cross-examination.

3. Vouching. The defendant claims that Faria, the daughter, and the Commonwealth's expert pediatrician all improperly vouched for the victims' testimony.

a. Faria. As noted, the defense called Faria as a witness and elicited testimony about inconsistencies between the victims' testimony at trial, their statements in their forensic interviews, and what they said during trial preparation meetings at the district attorney's office. On cross-examination, the

6

Commonwealth was permitted to ask Faria, over objection, whether "the vast majority of what [the older victim] said during [the trial preparation] meeting was consistent with" her prior disclosures, to which Faria answered, "Yes, it was." The defendant contends that this amounted to improper vouching for the older victim's credibility.

Earlier during the Commonwealth's cross-examination of Faria, the judge indicated that because the defense questioning had suggested that the victims' testimony was "recent contrivance," the Commonwealth would be permitted to elicit some prior consistent statements. See Commonwealth v. Caruso, 476 Mass. 275, 284-285 (2017); Mass. G. Evid. § 613(b)(2) (2022). However, the judge was not inclined to permit the Commonwealth to take Faria through the victims' consistent statements "line by line." The judge did not abuse his "broad discretion," Caruso, supra at 285, by permitting the Commonwealth to rebut the defendant's claim of recent contrivance in this abbreviated way.

b. The daughter. When asked, over objection, how she explained to the victims "that they would not or could not see their grandfather" after their disclosures, the daughter answered, "Oh, I had just told them that it wasn't safe, and I had to protect them, and they could not go over there anymore." To the extent that this testimony could be understood as

7

vouching for the victims' testimony, we are confident that it had no influence on the jury.  Contrast Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).  The daughter testified, as the first complaint witness, that the victims disclosed the defendant's abuse to her.  She testified that she then called the defendant and asked him to turn himself in to the police, and that she herself went to the police to report the crimes. Furthermore, both victims testified that they did not disclose the abuse at first because the defendant told them not to, as he would go to jail.  The younger victim added that she decided to tell anyway because she "recognized" the defendant "was an unsafe person."  The daughter's challenged testimony "did not prejudice the defendant because it was merely cumulative of properly admitted evidence."  Commonwealth v. Wilson, 427 Mass. 336, 348 (1998).

c.  The pediatrician.  The prosecutor asked the Commonwealth's expert pediatrician, who was called as a witness primarily to explain why the victims' physical examinations showed no evidence of sexual abuse, about the difference between a circumcised penis and an uncircumcised penis.[6]  The defendant

---

[6] The parties stipulated that the defendant was not circumcised. During cross-examination of the older victim, the defense introduced a picture of the defendant's erect penis that she had drawn during her forensic interview.  It arguably did not depict any foreskin.  The older victim testified that "the skin would

8

objected on grounds of relevance and reliability, because the expert worked with children rather than adults.  The judge allowed the questioning based on the witness's medical training.  We discern no abuse of discretion.  See Commonwealth v. Richardson, 423 Mass. 180, 182 (1996).  The defendant did not object, on vouching grounds or otherwise, when the pediatrician testified that circumcised and uncircumcised penises look similar.  The testimony was relevant because the defendant maintained that the appearance of his penis exonerated him, and it was admissible to help the jury to understand the evidence.  See Mass. G. Evid. § 702(a) (2022).

4.  Hearsay admission.  During direct examination by the prosecutor, the daughter testified about the defendant's statements to her during a telephone conversation the night she reported the crimes to the police.[7]  On redirect examination, the prosecutor asked whether she also heard the defendant tell her mother (the defendant's wife) "that he didn't want her to find out this way."  The daughter answered, "Yes," but then added, "Well, I didn't hear him.  I'm sorry.  She had said to me in a

_____

be over it until he got erect."  The defense contended that she was coached to give this answer.

[7] When the daughter asked the defendant over the telephone to turn himself in, he responded, "[N]o, that if he did that, it would kill him.  And did he want [the daughter] to kill [her] mother, as well, because no one would be there to take care of her."  Significantly, during this conversation the defendant did not deny the victims' allegations.

9

conversation --." The defendant objected and moved to strike. The judge immediately said, "Sustained. The jury's to disregard that last statement." The judge then called the parties to sidebar, where it became clear that the prosecutor believed that the daughter had heard the defendant's statement first-hand. The judge released the jury for the morning break and held a voir dire of the daughter, after which he determined that her testimony about the defendant's statement was inadmissible hearsay. When the jury returned, the judge reiterated that the daughter's "partial answer" had been struck, and that the jury were to "disregard anything that was said in regards to that." The defendant did not object, and the statement was not mentioned again.[8]

For the first time on appeal, the defendant argues that the judge's instructions were confusing and misleading and, in effect, permitted the defendant's statement "that he didn't want [his wife] to find out this way" to stand. We agree that the instructions were not precise as to which portion of the daughter's testimony the jury were required to disregard. But defense counsel did not object to the curative instruction or ask the judge to clarify, an indication that he believed the

---

[8] In the final charge, the judge reminded the jury, "You may not consider any answer which I struck from the record and told you to disregard."

10

instruction was adequate at the time.  Because the judge "had no opportunity to clarify further . . . we must determine whether any error created a substantial risk of a miscarriage of justice."  Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005).  The absence of any objection, further attempt to clarify, or motion for a mistrial persuades us that, to whatever extent the curative instruction might not have adequately addressed the hearsay testimony, there was no substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Rubin, Massing & D'Angelo, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  February 8, 2023.

---

[9] The panelists are listed in order of seniority.